PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-9002
_____

ROBERT W. JACKSON, III

v.

CARL C. DANBERG, Commissioner,
Delaware Department of Correction;
THOMAS L. CARROLL,
Warden Delaware Correctional Center;
PAUL HOWARD,
Bureau Chief Delaware Bureau of Prisons;
OTHER UNKNOWN STATE ACTORS
RESPONSIBLE FOR AND PARTICIPATING IN
THE CARRYING OUT OF PLAINTIFF'S EXECUTION

Robert W. Jackson, III, individually and
on behalf of the Certified Class,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-06-cv-00300)
District Judge: Honorable Sue L. Robinson

_____

Argued July 28, 2011
Before:  AMBRO, FISHER and
HARDIMAN, *Circuit Judges*.

(Filed: September 7, 2011  )

Helen A. Marino, Esq.
Maria K. Pulzetti, Esq.
Michael Wiseman, Esq. (Argued)
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA  19106
        *Counsel for Appellant*

Elizabeth R. McFarlan, Esq.
Marc P. Niedzielski, Esq.
Gregory E. Smith, Esq.
Paul R. Wallace, Esq (Argued)
Morgan Zurn, Esq.
State of Delaware
Department of Justice
820 North French Street
Carvel Office Building, 6th Floor
Wilmington, DE  19801
        *Counsel for Appellees*

2

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

A class of inmates sentenced to death by the State of Delaware and named plaintiff Robert W. Jackson, III (collectively referred to in this opinion as "Plaintiffs"), appeal from the District Court's denial of their motion to reopen and their motion for a stay of Jackson's execution. After careful review, we conclude that the District Court did not abuse its discretion, and, accordingly, we affirm.

I.

A. Facts

This is our second encounter with a 42 U.S.C. § 1983 challenge related to Delaware's lethal injection protocol. Much of the background factual information in this case is the same as we recounted in *Jackson v. Danberg*, 594 F.3d 210 (3d Cir. 2010) ("*Jackson I*"), and so we only will briefly outline that background material before setting forth in more detail those facts essential to the resolution of this appeal.

Delaware law provides that:

[p]unishment of death shall, in all cases, be inflicted by intravenous injection of a substance or substances in a lethal quantity sufficient to

3

cause death and until such person sentenced to death is dead, and such execution procedure shall be determined and supervised by the Commissioner of the Department of Correction.

DEL. CODE ANN. tit. 11, § 4209(f) (2006 Supp.). The statute does not mandate the use of any particular drug or series of drugs.

On August 29, 2008, the Delaware Department of Correction ("DDOC") instituted a new lethal injection protocol ("2008 Protocol"). The protocol calls for the sequential intravenous ("IV") injection of three chemicals into an inmate's bloodstream. The first chemical is sodium thiopental, which renders an inmate unconscious. The second chemical is pancuronium bromide, a muscle relaxant that acts as a paralytic agent. The third and final chemical is potassium chloride, which induces cardiac arrest and causes the inmate's death. The 2008 Protocol also calls for the IV team, consisting of two people who may have at least one year of professional experience,[1] to examine the inmate to ensure he is unconscious before the pancuronium bromide is administered. The consciousness check requires the warden to call the inmate's name out loud to observe any reaction from the inmate. At the same time, a member of the IV team assesses the inmate's consciousness by touching the inmate, shaking his shoulder, and brushing his eyelashes. If the

---

[1] Those specialists include a certified medical assistant, a phlebotomist, an emergency medical technician, a paramedic, and a military corpsman.

4

inmate is not unconscious, the protocol requires the execution team to repeat the administration of the first chemical and subsequent consciousness checks until the inmate is deemed unconscious.

Delaware amended its protocol on May 5, 2011. The amended protocol, which is before us today, includes only one significant difference. Due to a nationwide shortage of sodium thiopental, Delaware, along with a number of other states, revised its protocol to allow for the use of an alternative barbiturate, pentobarbital, as the first chemical to be administered.

### B. Procedural History

Jackson, a Delaware state inmate convicted of first degree murder and sentenced to death by the State of Delaware, commenced this action on May 8, 2006. He filed a section 1983 action[2] alleging that the State of Delaware's

---

[2] 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

then-existing method of lethal injection created an unconstitutional risk of pain and suffering, cognizable under the Eighth and Fourteenth Amendments of the United States Constitution.[3] The District Court certified a class under Fed. R. Civ. P. 23(b) consisting of all Delaware death row inmates and appointed class counsel. *See Jackson v. Danberg*, 240 F.R.D. 145 (D. Del. 2007).

During the course of litigation in the District Court, Defendants amended their lethal injection protocol twice. Ultimately, the 2008 Protocol was enacted in an effort to incorporate the safeguards described by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), which upheld Kentucky's lethal injection protocol against a challenge under the Eighth Amendment. Upon adoption of the 2008 Protocol and at the direction of the District Court, Defendants moved for summary judgment. They argued that the 2008 Protocol fully complied with the mandate of *Baze* and that the lethal injection protocol, including the use of sodium thiopental, did not constitute cruel and unusual punishment. The District Court acknowledged that the DDOC had failed to follow its own procedures in certain executions but held that Plaintiffs

---

[3] Jackson named the following defendants in his complaint: Stanley W. Taylor, Jr., Commissioner, Delaware Department of Correction; Thomas L. Carroll, Warden, Delaware Correctional Center; Paul Howard, Bureau Chief, Delaware Bureau of Prisons; and other unknown Delaware officials (collectively, "Defendants"). In February 2007, the District Court substituted Taylor with his successor, Carl C. Danberg.

had not shown a "substantial risk of an inadequate dose of sodium thiopental." *Jackson v. Danberg*, 601 F. Supp. 2d 589, 599 (D. Del. 2009). The District Court granted summary judgment to Defendants and stayed executions pending appeal. *Id.*

Plaintiffs appealed, and Defendants cross-appealed the stay of executions. We affirmed the grant of summary judgment, applying *Baze* to our analysis. *Jackson I*, 594 F.3d 210. We held that to prevail on a claim that a risk of future harm runs afoul of the Constitution, an inmate must demonstrate that "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Id.* at 216 (quoting *Baze*, 553 U.S. at 50). We noted that "the proper administration of sodium thiopental is an indispensable link in the lethal injection chain for Eighth Amendment purposes, as it ensures that an inmate will not suffer under the effects of the second two drugs." *Id.* at 225. In other words, although "[r]easonable people of good faith disagree on the morality and efficacy of capital punishment," Delaware's 2008 Protocol is not unconstitutional under existing Supreme Court precedent. *Id.* at 230 (quoting *Baze*, 553 U.S. at 61). The Supreme Court denied certiorari on October 12, 2010. *Jackson v. Danberg*, 131 S. Ct. 458 (2010).

Shortly after Delaware changed its protocol to include pentobarbital as an alternative to sodium thiopental in May 2011, Plaintiffs filed a motion to reopen under Fed. R. Civ. P. 60(b)(6) and (d) and a motion to stay Jackson's execution with the District Court. Plaintiffs argued that the substitution

7

of pentobarbital for sodium thiopental is a factual change that undermines the foundations of the prior ruling, constituting an exceptional circumstance under Rule 60(b)(6) and a circumstance calling for an independent action to prevent a miscarriage of justice under Rule 60(d). They relied on an expert report written by David B. Waisel, M.D., in support of their motion. Defendants, in turn, relied on an expert report by Dr. Mark Dershwitz, an anesthesiologist with a Ph.D. in pharmacology. The District Court denied both of Plaintiffs' motions. It found that a stay was not warranted because Plaintiffs had "not carried their burden to prove that they are likely to succeed on the merits of their Eighth Amendment claim." *Jackson v. Danberg*, 2011 WL 3205453, at \*3 (D. Del. July 27, 2011). The District Court also denied Plaintiffs' motion to reopen under both Rules 60(b)(6) and 60(d), concluding that "the record at bar is insufficient to reopen the judgment entered by [it] in 2009." *Id.* at \*4. Plaintiffs timely appealed the judgment of the District Court and filed an independent motion for a stay.

We denied the motion to stay on July 28, 2011, and affirmed the judgment of the District Court with an opinion to follow.[4] Following our decision, the Supreme Court denied

---

[4] The panel issued its order around 7:00 p.m. on July 28, 2011, approximately five hours before the scheduled time of execution.

certiorari, and Robert Jackson was executed just after midnight on July 29, 2011, by lethal injection.[5]

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to consider the appeal by Plaintiffs from the District Court's denial of injunctive relief and under 28 U.S.C. § 1291 to consider the appeal by Plaintiffs from the District Court's denial of relief under Fed. R. Civ. P. 60(b) and (d). We review a district court's denial of a stay for abuse of discretion, which may be found where its conclusion includes the commission of a serious error of law or a mistake in considering the facts. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990). We also review a district court's denial of a Rule 60(b) and (d) motion to reopen for abuse of discretion. *Morris v. Horn*, 187 F.3d 333, 341 (3d Cir. 1999).

## III.

### A. Stay

"[A] stay of execution is an equitable remedy" that "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal

---

[5] We write on this issue as this appeal was filed on behalf of a class, and it impacts appellants other than Jackson.

courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). The standard for issuance of a stay is like that for issuance of a preliminary injunction, and requires consideration of four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). In assessing these factors, we underscore that "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584.

Plaintiffs argue that because pentobarbital is not approved by the Food and Drug Administration ("FDA") for use as an anesthetic, its performance in the three-drug protocol, namely its manner and timing of inducing unconsciousness, is unknown and unpredictable and therefore violative of the Eighth Amendment. In support of their argument that pentobarbital renders the lethal injection protocol unconstitutional, Plaintiffs proffer the following evidence: (1) the opinion of Dr. David Waisel, an anesthesiologist at Harvard Law School, who, among other things, has reviewed eyewitness accounts and has concluded

10

that Alabama prisoner Eddie Powell and Georgia prisoner Roy Blankenship were inadequately anesthetized by pentobarbital and suffered greatly from their executions; (2) the fact that pentobarbital is not approved by the FDA for use as an anesthetic; and (3) the fact that pentobarbital is less lipid-soluble than sodium thiopental and therefore does not cross the blood-brain barrier as quickly.

Plaintiffs' challenge to the DDOC's substitution of pentobarbital for sodium thiopental is governed by the Supreme Court's splintered decision in *Baze*. In *Baze*, the Supreme Court recognized "that subjecting individuals to a risk of future harm – not simply actually inflicting pain – can qualify as cruel and unusual punishment." 553 U.S. at 49. However, to constitute a violation of the Eighth Amendment, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Id*. at 50 (quoting *Helling*, 509 U.S. at 34-35). "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Id*. Rather, a stay of execution may only be granted where "the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain . . . [and] that the risk is substantial when compared to the known and available alternatives." *Id*. at 61.

The District Court, applying the *Baze* principles, concluded that Plaintiffs failed to demonstrate that the substitution of pentobarbital resulted in a constitutionally unacceptable risk of pain and suffering. It noted that

11

Delaware's protocol calls for the administration of five grams of pentobarbital, which on its own is a lethal dose according to Dr. Dershwitz. Moreover, the Delaware protocol calls for a consciousness check after two minutes have lapsed, followed by the administration of a second dose of pentobarbital if the inmate is still conscious after two minutes. Based upon these factual findings and procedural safeguards, the District Court concluded that Plaintiffs had not presented "affirmative evidence . . . that the administration of pentobarbital as the first drug in Delaware's three-drug protocol creates a demonstrated risk of severe pain, as required by the Supreme Court." *Jackson*, 2011 WL 3205453, at *3. In other words, the District Court concluded that Plaintiffs failed to demonstrate a likelihood of success on the merits and accordingly denied the stay.

After conducting our own searching review of the record, we conclude that the District Court did not abuse its discretion in denying Plaintiffs' motion for a stay. The District Court's factual findings are supported by the testimony of Defendants' expert, Dr. Dershwitz. The purpose of the anesthetic in Delaware's lethal injection protocol is to render the inmate unconscious before administration of the

12

second and third drugs, and there is no affirmative evidence that pentobarbital fails to do this.[6]

---

[6] Jackson urges us to consider Georgia's execution of Roy Blankenship and Alabama's execution of Eddie Powell as affirmative evidence that pentobarbital fails to properly anesthetize inmates. Dr. Waisel, who formulated his opinion based on witnesses' accounts of the execution and some movement by the inmates during the initial three minutes at the start of the execution process, expressed concern that Blankenship and Powell were insufficiently anesthetized. Witnesses described these executions in contradictory ways. For example:

> To some, Blankenship was just looking up and watching what was occurring, looked at his left arm (which had an IV saline drip) and then 30 to 60 seconds later looked toward his right arm where the administration of the pentobarbital was starting. To others, Blankenship appeared to grimace, or have a startled face, or jerked his arm twice, or had his mouth open and tried to mouth something.

*DeYoung*, 2011 WL 2899704, at *5. Under Georgia's protocol, the execution could not proceed until a consciousness check was performed. The District Court was not persuaded by this equivocal evidence of consciousness in the face of strict procedural safeguards, and we see no abuse of discretion in its conclusion.

13

Indeed each court to consider this issue has uniformly held that the use of pentobarbital in lieu of sodium thiopental is constitutional.[7] *See*, *e.g.*, *DeYoung v. Owens*, --- F.3d ---, 2011 WL 2899704, at *3 (11th Cir. July 20, 2011); *Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011) (per curiam); *Pavatt v. Jones*, 627 F.3d 1336 (10th Cir. 2010). For example, the United States Court of Appeals for the Tenth Circuit approved a protocol virtually identical to Delaware's after allowing an Oklahoma death-sentenced inmate to conduct discovery, submit an expert report, and hold an evidentiary hearing. *Pavatt*, 627 F.3d at 1338-40. In *Pavatt*, the district court considered evidence that: (1) the first step of Oklahoma's lethal injection protocol mandates the intravenous administration of five grams of pentobarbital; (2) the protocol requires the attending physician to ensure that the inmate is sufficiently unconscious prior to the administration of the paralytic agent; (3) the administration of a sufficient dose of pentobarbital will render an individual unconscious; (4) the defendant's expert witness, Dr. Dershwitz, testified that the five-gram dosage will ensure that the inmate does not feel the effects of the paralytic agent; and (5) Dr. Dershwitz responded to Dr. Waisel's testimony by pointing out that the use of pentobarbital to induce a barbiturate coma takes the patient to a state of unconsciousness beyond a normal clinical level of anesthesia.

---

[7] While these cases are not controlling, it is noteworthy that the expert reports before the District Court here were written by the same experts utilized in the other courts of appeals cases.

14

*Id.* at 1339. At the conclusion of the hearing, the district court denied the motion for a stay, concluding that the prisoner failed to establish a substantial likelihood of success on the merits of his Eighth Amendment challenge.

On appeal, the Tenth Circuit held that the district court did not abuse its discretion in denying a stay. Specifically, the Tenth Circuit observed that Dr. Dershwitz had "substantially more clinical experience with the use of pentobarbital than Dr. Waisel." *Id.* at 1340. The court also noted the importance of the consciousness check to its analysis, and held that the inmate "failed to establish a substantial likelihood of success on the merits of his Eighth Amendment challenge to the . . . revised protocol." *Id.*; *see also DeYoung*, 2011 WL 2899704, at *6 ("DeYoung has wholly failed to show that pentobarbital, once fully administered and allowed to act, is ineffective as an anesthetic.");[8] *Powell*, 641 F.3d at 1257-58 (approving the substitution of pentobarbital for sodium thiopental). We agree with the Tenth Circuit's approach and likewise conclude that Plaintiffs cannot establish that pentobarbital is

---

[8] Plaintiffs' assertion that the Eleventh Circuit's denial of DeYoung's claims was based entirely on Georgia's two-year statute of limitations is only partially correct. *DeYoung*, 2011 WL 2899704, at *3. The court engaged in a thorough analysis of the merits of DeYoung's claims and held in the alternative that "even if [DeYoung's claims] were timely, they fail as a matter of law . . . because [he] has not established a substantial likelihood of success on the merits of his claims." *Id.*

15

"*sure or very likely* to cause serious illness and needless suffering."  *Baze*, 553 U.S. at 50 (quoting *Helling*, 509 U.S. at 34-35).

Finally, Plaintiffs argue that the District Court misapplied the legal rubric of *Baze* by failing to engage in an additional inquiry with respect to their execution challenge: a comparative risk analysis.  According to Plaintiffs, the District Court was required to consider the comparative risks of "known and available alternatives" to Delaware's pentobarbital three-drug protocol.  Specifically, they argue the District Court should have considered the comparative risk of (1) a known anesthetic drug with a proven track record, for use as the first drug in the three-drug protocol, or (2) a single-drug execution protocol.[9]

Plaintiffs' argument misstates the law.  "[A] condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative."  *Baze*, 553 U.S. at 51.  Rather,

---

[9] With respect to the second option, Dr. Dershwitz testified that a five-gram dose of a barbiturate such as sodium thiopental or pentobarbital would cause death in all people, and that death would occur as quickly as five minutes from the injection.  Ohio has used a one-drug protocol since November 2009, and Washington adopted a one-drug protocol on March 2, 2010, but permits condemned inmates to select the method.  *See* Death Penalty Information Ctr., Authorized Methods, http://www.deathpenaltyinfo.org/methods-execution.

an inmate must first show that a state's current protocol creates a "demonstrated risk of severe pain." *Id.* at 61. Moreover, Delaware is not "compelled to change its lethal injection protocol simply because another state has elected to do so." *Jackson I*, 594 F.3d at 228. We recognize that the one-drug protocol is gaining support as an alternative to the three-drug lethal injection protocol, and we commend those states steadily striving to develop more humane alternatives to existing methods of execution. However, federal courts are not "boards of inquiry charged with determining 'best practices' for executions." *Baze*, 553 U.S. at 51.

"Pentobarbital is a barbiturate commonly used to euthanize terminally ill patients who seek death with dignity in states such as Oregon and Washington." *Beaty v. Brewer*, --- F.3d. ---, 2011 WL 2040916, at *4 (9th Cir. 2011) (denying rehearing en banc because inmate had no likelihood of success on Eighth Amendment claim based on pentobarbital). It has been used successfully for executions in at least four other states, and there is no evidence that it fails

to render an inmate unconscious.[10] *Id.* The District Court did not abuse its discretion in finding that the use of pentobarbital did not create "a demonstrated risk of severe pain, as required by the Supreme Court." *Jackson*, 2011 WL 3205453, at *3. Thus, we affirm the District Court's denial of the stay.[11]

## B.  60(b)(6) and 60(d)

[10] Plaintiffs also assert that Defendants' use of pentobarbital is violative of the Eighth Amendment because it evinces Defendants' deliberate indifference to the potential pain and suffering he will undergo. We have previously held that *Baze* did not import the "deliberate indifference" standard to lethal injection challenges. *See Jackson I*, 594 F.3d at 223 n.16. Instead, the *Baze* Court held that "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Baze*, 553 U.S. at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846, & n.9 (1994)). Even if this language did graft the deliberate indifference standard onto lethal injection challenges, because we conclude that there was no "substantial risk of serious harm," we also conclude that there could have been no deliberate indifference to that alleged risk.

[11] Because we conclude that Plaintiffs have not demonstrated a likelihood of success on the merits, we need not address the other factors required for a stay of an execution.

18

Rule 60(b)(6) relief from judgment is only granted in extraordinary circumstances. *See Martinez-McBean v. Govt. of Virgin Islands*, 562 F.2d 908, 911-12 (3d Cir. 1977).[12] It is available where the party seeking relief demonstrates that "extreme" and "unexpected" hardship will result absent such relief. *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932). Similarly, Rule 60(d) permits a court to entertain an independent action to relieve a party from a judgment in order to "prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

Plaintiffs claim that the addition of pentobarbital as an available alternative to sodium thiopental is such a circumstance. In making this argument, Plaintiffs urge that the use of sodium thiopental was central to our decision in *Jackson I*, and that the substitution of an alternative barbiturate undermines the very foundation of our decision.

In *Jackson I*, we held that Delaware's three-drug protocol did not violate the Eighth Amendment, and stated that "the proper administration of sodium thiopental is an indispensable link in the lethal injection chain for Eighth Amendment purposes, as it ensures that an inmate will not suffer under the effects of the second two drugs." 594 F.3d at 225. However, the import of both *Baze* and *Jackson I* is that use of an effective anesthetic as the first drug in a three-drug

---

[12] Fed. R. Civ. P. 60(b)(6) provides, in pertinent part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief."

19

protocol is required to satisfy the Eighth Amendment. In other words, "[t]he proper administration of the first drug [must] ensure[] that the prisoner does not experience any pain associated with the paralysis and cardiac arrest caused by the second and third drugs." *Baze*, 553 U.S. at 44.

We cannot say that the District Court's finding that pentobarbital is an effective anesthetic for purposes of the three-drug lethal injection is clearly erroneous, particularly based on its demonstrated uses and the testimony of Dr. Dershwitz. Accordingly, we conclude that the District Court did not abuse its discretion in denying Plaintiffs' motion to reopen, and we agree that "the substitution of pentobarbital for sodium thiopental does not constitute a factual change which undermines the foundation of [the] prior ruling," necessitating independent action under either Rule 60(b)(6) or 60(d). *Jackson*, 2011 WL 3205453, at *4.[13]

IV.

---

[13] We also conclude that the District Court did not abuse its discretion in declining to grant an evidentiary hearing on the matter. Having presided over the entire case and being intimately familiar with the record to date as well as the submissions regarding pentobarbital, the District Court was well-situated to rule on the motion to reopen and the motion for the stay, and additional discovery would not further illuminate the issue at bar. *See United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010) (setting forth the standard of review).

20

For all of these reasons, we conclude that Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claims, and that the District Court did not abuse its discretion in denying a stay of Jackson's execution and Plaintiffs' motion to reopen. Accordingly, we will affirm.