NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1542
_____

EARL C. HANDFIELD, II,
Appellant

v.

SUPERINTENDENT ROCKVIEW SCI; DISTRICT ATTORNEY CHESTER
COUNTY; ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-01634)
District Judge: Hon. Jeffrey L. Schmehl
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2022

Before: JORDAN, HARDIMAN, and SMITH, *Circuit Judges*.

(Filed: September 14, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Earl Handfield appeals an order of the District Court denying his motion for relief under Rule 60(d) of the Federal Rules of Civil Procedure. The crux of Handfield's claim is that the Commonwealth of Pennsylvania failed to produce exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Because Handfield cannot show prejudice from any *Brady* violation, we will affirm.

I

A jury convicted Handfield of first-degree murder and possessing an instrument of crime. One of the Commonwealth's most important witnesses, who testified pursuant to a cooperation agreement, saw Handfield fire a warning shot at Corey Jennings before chasing him into an alley. The witness heard multiple gunshots before Handfield emerged from the alley alone. Handfield told the witness that he shot Jennings.

Handfield's girlfriend, Adrienne Beckett, also testified. She said that Handfield came to her home the night of the shooting. According to Beckett, she asked what happened, and Handfield responded that "he had to do what he had to do." App. 1031. Handfield then drove her to Maryland, where he left the gun in a dumpster. Beckett at first lied to the grand jury about the events of that night, but she later came clean and testified at trial to avoid perjury charges. On cross-examination, Handfield's attorney impeached Beckett by citing apparent inconsistencies between her version of the night's events and her phone records. Still the jury returned a guilty verdict, which was affirmed on appeal. *Commonwealth v. Handfield*, 34 A.3d 187, 188 (Pa. Super. Ct. 2011).

Handfield filed for post-conviction relief in state court. As relevant here,

2

Handfield argued that his trial counsel was ineffective for failing to call Beckett's son, Willie Suber, who could have refuted his mother's testimony. In an amended petition, Handfield claimed—for the first time—that the Commonwealth did not fulfill its *Brady* obligations because it failed to turn over a video of Suber's police interview.

At the post-conviction relief hearing, Handfield's trial counsel, Joseph Green, testified that he knew Suber had told police that Handfield did not visit Beckett's house on the night of the murder. Green had a summary of Suber's statement but never saw the video recording. Green testified that he decided not to call Suber because he did not want to "beat up" the son of the prosecution's witness, fearing that tactic would make Beckett more sympathetic to the jury. App. 1830. So he employed a different strategy to impeach her credibility. At the post-conviction relief hearing, Green saw the recorded statement for the first time. He admitted that "the video had much more detail than the statement that [h]e had." App. 1844. Yet when asked whether it would have changed his trial strategy, Green testified, "I don't know." App. 1843.

The Court of Common Pleas denied Handfield's petition for post-conviction relief. It held, among other things, that Handfield suffered no prejudice from any alleged *Brady* violation. The Superior Court affirmed, although it resolved the *Brady* claim by concluding it was "waived." *Commonwealth v. Handfield*, 2016 WL 5266564, at *5, *10 (Pa. Super. Ct. July 20, 2016). Handfield then filed a federal habeas petition, which the Magistrate Judge recommended denying because "Mr. Suber's testimony would not have produced a different verdict." *Handfield v. Garman*, 2017 WL 8222645, at *19 (E.D. Pa. Oct. 11, 2017). The District Court adopted the Magistrate's recommendation. *Handfield*

3

*v. Garman*, 2018 WL 1317762, at *1 (E.D. Pa. Mar. 14, 2018). We declined to issue a certificate of appealability. *Handfield v. Superintendent Rockview SCI*, 2018 WL 9786885, at *1 (3d Cir. Oct. 15, 2018), *cert. denied*, 140 S. Ct. 181 (2019).

Handfield then moved for relief from judgment under Federal Rule of Civil Procedure 60(b). In an amendment to that motion, he renewed his claim that the habeas court misapplied *Brady*, citing our decision in *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016). The District Court denied that motion. *Handfield v. Garman*, 2019 WL 4752025, at *2 (E.D. Pa. Sept. 30, 2019). We again declined to issue a certificate of appealability. *Handfield v. Superintendent Rockview SCI*, 2020 WL 2061563, at *1 (3d Cir. Feb. 18, 2020).

Handfield responded by filing a motion for relief from judgment under Rule 60(d), asserting that the District Court incorrectly denied his Rule 60(b) motion. The District Court also denied that motion, *Handfield v. Garman*, 2020 WL 868126, at *1 (E.D. Pa. Feb. 21, 2020), but this time we granted a certificate of appealability on the *Brady* issue.

II[1]

The standard of review imposes a heavy burden on Handfield. In a typical case, we may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 2241, 2254. We have jurisdiction under 28 U.S.C. §§ 1291, 2253.

4

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] But this is not a typical habeas case. Rather, it is an appeal from the District Court's order denying the Rule 60(d) motion, seeking relief from the order denying the Rule 60(b) motion, which in turn sought relief from the order denying habeas relief. We review a District Court's denial of a Rule 60(d) motion for abuse of discretion. *Jackson v. Danberg*, 656 F.3d 157, 162 (3d Cir. 2011). And in this layered posture, we will grant relief only if the District Court committed "a serious error of law or a mistake in considering the facts" in holding that the state court's decision was not "contrary to" or "an unreasonable application" of federal law. *See id.*; 28 U.S.C. § 2254(d)(1).

Even if the Suber video constituted *Brady* material, Handfield is entitled to a writ of habeas corpus only if he shows that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).; *see also United States v. Zayas*, 32 F.4th 211, 230 (3d Cir. 2022) ("Our prejudice inquiry turns on whether the defendant received a fair trial, one resulting in a verdict worthy of confidence, in the absence of the evidence [the

---

[2] Under AEDPA's deferential standard, we review the Court of Common Pleas' decision denying Handfield's post-conviction relief petition because it is "the state courts' last reasoned opinion on this topic." *Bond v. Beard*, 539 F.3d 256, 289 (3d Cir. 2008). The Superior Court held that Handfield had waived his *Brady* claim, and it did not address the Court of Common Pleas' alternative holding rejecting the claim on the merits. *Handfield*, 2016 WL 5266564, at *5. Regardless of whether that holding means Handfield's claim is procedurally defaulted, we are authorized to reject the claim on the merits, 28 U.S.C. § 2254(b)(2), and we do so.

prosecution failed to turn over].").

As the state court recognized, Handfield did not carry this heavy burden. His trial counsel, Green, testified at the post-conviction relief hearing that he made a strategic decision not to call Suber. Green did not want to "beat up" the son of the prosecution's witness. App. 1830. Instead, he employed a different impeachment strategy. After watching the video of Suber's police interview, Green admitted that "the video had much more detail than the statement." App. 1844. Yet Green demurred on whether the video would have changed his trial strategy: "If you're asking me would that video have led me to different conclusions, I don't think I can say one way or the other." App. 1843.

Handfield asks us to ignore Green's testimony because only a constitutionally ineffective lawyer would have failed to call Suber after seeing the video of his police interview. We disagree. Green had good reason not to call Suber at trial, considering he had other avenues to impeach Beckett without making her look sympathetic to the jury as a mother. Green focused on Beckett's different versions of that night and emphasized the apparent conflict between the timeline she described at trial and her phone records. Moreover, Suber's testimony at the post-conviction relief hearing vindicated Green's tactical decision. There, Suber testified that he "might have left [his mother's house] sometime" on the night of the murder, so he could not say that Handfield never came to the house that night. App. 1911–12. Suber also admitted to smoking and dealing marijuana around the time of the murder, although he denied being high that night.

In sum, counsel's strategic decision not to call Suber to testify at trial is supported by the record, regardless of the content of the video. So as the state court rightly

6

recognized, Handfield cannot show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 682).

\*　　\*　　\*

For the reasons stated, the District Court did not abuse its discretion in denying Handfield's Rule 60(d) motion. We will therefore affirm.