(Slip Opinion)                OCTOBER  TERM,  2005                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HILL *v.* McDONOUGH, INTERIM SECRETARY, FLOR-IDA DEPARTMENT OF CORRECTIONS, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 05–8794.   Argued April 26, 2006—Decided June 12, 2006

Facing execution in Florida, petitioner Hill brought this federal action under 42 U. S. C. §1983 to enjoin the three-drug lethal injection procedure the State likely would use on him.  He alleged the procedure could cause him severe pain and thereby violate the Eighth Amendment's prohibition of cruel and unusual punishments.  The District Court found that under controlling Eleventh Circuit precedent the §1983 claim was the functional equivalent of a habeas petition.  Because Hill had sought federal habeas relief earlier, the court deemed his petition successive and barred under 28 U. S. C. §2244.  The Eleventh Circuit agreed and affirmed.

*Held:* Because Hill's claim is comparable in its essentials to the §1983 action the Court allowed to proceed in *Nelson* v. *Campbell,* 541 U. S. 637, it does not have to be brought in habeas, but may proceed under §1983.  Pp. 4–10.

  (a) *Nelson* controls here.  Although an inmate's challenge to the lawfulness of a sentence or confinement is the province of habeas corpus, *e.g., Muhammad* v. *Close,* 540 U. S. 749, 750, the *Nelson* Court declined to deem the instant §1983 Eighth Amendment "challenge seeking to permanently enjoin the use of lethal injection . . . a challenge to the fact of the sentence itself," 541 U. S., at 644.  Nelson's veins were severely compromised, and Alabama planned to apply an invasive surgical procedure to enable the injection.  However, that procedure was not mandated by state law, and Nelson appeared willing to concede the existence of an acceptable alternative procedure.  Absent a finding that the procedure was necessary to the lethal injection, the Court concluded, injunctive relief would not prevent the State from implementing the sentence.  *Id.*, at 645–646.  Here, as in *Nelson*,

Hill's action if successful would not necessarily prevent the State
from executing him by lethal injection.  He does not challenge his
sentence as a general matter but seeks only to enjoin respondents
from executing him in a manner that allegedly causes a foreseeable
risk of gratuitous and unnecessary pain.  He concedes that other le-
thal injection methods the State could choose would be constitutional,
and respondents do not contend, at least at this point, that an injunc-
tion would leave no other practicable, legal method of lethally inject-
ing Hill.  Florida law, moreover, does not require the use of the chal-
lenged procedure.  Under these circumstances a grant of injunctive
relief could not be seen as barring the execution of Hill's sentence.
The fact that Hill challenges the chemical injection sequence rather
than a preliminary surgical procedure does not change the analysis.
In *Nelson*, the Court reasoned that "the gravamen of petitioner's en-
tire claim" was that the surgical procedure was "gratuitous," *id.*, at
645, whereas Hill alleges that the procedure he challenges presents a
risk of pain the State can avoid while still being able to enforce his
sentence.
   The Court rejects two rules proposed by respondents and their
*amici* to counter the prospect of inmates filing successive §1983 ac-
tions challenging one aspect of an execution procedure after another
in order to forestall execution.  First, the United States contends that
a capital litigant's §1983 action can proceed only if, as in *Nelson,* the
prisoner identifies an alternative, authorized method of execution.
Although Nelson's doing so supported the Court's conclusion that his
suit need not proceed as a habeas action, that fact was not decisive.
*Nelson* did not change the traditional pleading requirements for
§1983 actions.  Specific pleading requirements are mandated by the
Federal Rules of Civil Procedure, and not, as a general rule, through
federal courts' case-by-case determinations.  Second, relying on cases
barring §1983 damages actions that, if successful, would imply the
invalidation of an existing sentence or confinement, see, *e.g.*, *Heck* v.
*Humphrey,* 512 U. S. 477, respondents and the *amici* States contend
that any challenge that would frustrate an execution as a practical
matter must proceed in habeas.  This argument cannot be squared
with *Nelson*'s observation, 541 U. S., at 646–647, that its criterion—
whether granting relief would necessarily bar the inmate's execu-
tion—is consistent with those cases.  Because injunctive relief would
not necessarily foreclose Florida from executing Hill by lethal injec-
tion under present law, it could not be said that this suit seeks to es-
tablish "unlawfulness [that] would render a conviction or sentence
invalid," *Heck, supra*, at 486.  Pp. 4–9.
   (b) Filing a §1983 action does not entitle the complainant to an
automatic stay of execution.  Such a stay is an equitable remedy not

Syllabus

available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from federal courts. Thus, inmates seeking time to challenge the manner of their execution must satisfy all of the requirements for a stay, including showing a significant possibility of success on the merits. A court considering a stay must also apply a strong equitable presumption against granting relief where the claim could have been brought at such a time as to allow consideration of the merits without requiring a stay. *Nelson, supra*, at 650. After *Nelson* federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late. Repetitive or piecemeal litigation presumably would raise similar concerns. States can and should be protected from dilatory or speculative suits, but it is not necessary to reject *Nelson* to do so. The equities and merits of Hill's underlying action are not before this Court. Pp. 9–10.

437 F. 3d 1084, reversed and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

－－－－－－

No. 05–8794

－－－－－－

## CLARENCE E. HILL, PETITIONER *v.* JAMES R. McDONOUGH, INTERIM SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 12, 2006]

JUSTICE KENNEDY delivered the opinion of the Court.

Petitioner Clarence E. Hill challenges the constitutionality of a three-drug sequence the State of Florida likely would use to execute him by lethal injection. Seeking to enjoin the procedure, he filed this action in the United States District Court for the Northern District of Florida, pursuant to the Civil Rights Act of 1871, Rev. Stat. §1979, as amended, 42 U. S. C. §1983. The District Court and the Court of Appeals for the Eleventh Circuit construed the action as a petition for a writ of habeas corpus and ordered it dismissed for noncompliance with the requirements for a second and successive petition. The question before us is whether Hill's claim must be brought by an action for a writ of habeas corpus under the statute authorizing that writ, 28 U. S. C. §2254, or whether it may proceed as an action for relief under 42 U. S. C. §1983.

This is not the first time we have found it necessary to discuss which of the two statutes governs an action brought by a prisoner alleging a constitutional violation.

See, *e.g.*, *Nelson* v. *Campbell,* 541 U. S. 637 (2004); *Heck* v. *Humphrey,* 512 U. S. 477 (1994); *Preiser* v. *Rodriguez,* 411 U. S. 475 (1973). Hill's suit, we now determine, is comparable in its essentials to the action the Court allowed to proceed under §1983 in *Nelson*, *supra*. In accord with that precedent we now reverse.

I

In the year 1983, Hill was convicted of first-degree murder and sentenced to death. When his conviction and sentence became final some five years later, the method of execution then prescribed by Florida law was electrocution. Fla. Stat. §922.10 (1987). On January 14, 2000—four days after the conclusion of Hill's first, unsuccessful round of federal habeas corpus litigation—Florida amended the controlling statute to provide: "A death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution." §922.105(1) (2003). The now-controlling statute, which has not been changed in any relevant respect, does not specify a particular lethal-injection procedure. Implementation is the responsibility of the Florida Department of Corrections. See *ibid.; Sims* v. *State*, 754 So. 2d 657, 670 (Fla. 2000) *(per curiam)*. The department has not issued rules establishing a specific lethal-injection protocol, and its implementing policies and procedures appear exempt from Florida's Administrative Procedure Act. See §922.105(7).

After the statute was amended to provide for lethal injection, the Florida Supreme Court heard a death row inmate's claim that the execution procedure violated the Eighth Amendment's prohibition of cruel and unusual punishments. *Sims* v. *State*, *supra*. In *Sims*, the complainant, who had acquired detailed information about the procedure from the State, contended the planned three-drug sequence of injections would cause great pain if the

drugs were not administered properly. 754 So. 2d, at 666–668. The Florida Supreme Court rejected this argument as too speculative. *Id.*, at 668.

On November 29, 2005, the Governor of Florida signed Hill's death warrant, which ordered him to be executed on January 24, 2006. Hill requested information about the lethal injection protocol, but the department provided none. App. 21, n. 3 (Verified Complaint for Declaratory & Injunctive Relief ¶15, n. 3 (hereinafter Complaint)). Hill then challenged, for the first time, the State's lethal injection procedure. On December 15, 2005, he filed a successive postconviction petition in state court, relying upon the Eighth Amendment. The trial court denied Hill's request for an evidentiary hearing and dismissed his claim as procedurally barred. The Florida Supreme Court affirmed on January 17, 2006. *Hill* v. *State*, 921 So. 2d 579, cert. denied, 546 U. S. \_\_\_ (2006).

Three days later—and four days before his scheduled execution—Hill brought this action in District Court pursuant to 42 U. S. C. §1983. Assuming the State would use the procedure discussed at length in the *Sims* decision, see App. 20–21, and n. 3 (Complaint ¶15, n. 3), Hill alleged that the first drug injected, sodium pentothal, would not be a sufficient anesthetic to render painless the administration of the second and third drugs, pancuronium bromide and potassium chloride. There was an ensuing risk, Hill alleged, that he could remain conscious and suffer severe pain as the pancuronium paralyzed his lungs and body and the potassium chloride caused muscle cramping and a fatal heart attack. *Id.,* at 18–21 (Complaint ¶¶9–16). The complaint sought an injunction "barring defendants from executing Plaintiff in the manner they currently intend." *Id.,* at 22 (Complaint ¶¶19–20).

The District Court found that under controlling Eleventh Circuit precedent the §1983 claim was the functional equivalent of a petition for writ of habeas corpus. *Id.,* at

15 (relying on *Robinson* v. *Crosby*, 358 F. 3d 1281 (2004)). Because Hill had sought federal habeas corpus relief in an earlier action, the District Court deemed his petition successive and thus barred for failure to obtain leave to file from the Court of Appeals as required by 28 U. S. C. §2244(b). On the day of the scheduled execution the Court of Appeals affirmed. It held that Hill's action was a successive petition and that it would deny any application for leave to file a successive petition because §2244(b)(2) would not allow his claim to proceed. *Hill* v. *Crosby*, 437 F. 3d 1084, 1085 (CA11 2006). After issuing a temporary stay of execution, this Court granted Hill's petition for certiorari and continued the stay pending our resolution of the case. 546 U. S. ___ (2006).

## II

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U. S. C. §2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. §1979, as amended, 42 U. S. C. §1983. Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad* v. *Close,* 540 U. S. 749, 750 (2004) *(per curiam)* (citing *Preiser, supra*, at 500). An inmate's challenge to the circumstances of his confinement, however, may be brought under §1983. 540 U. S., at 750.

In *Nelson* v. *Campbell, supra*, we addressed whether a challenge to a lethal injection procedure must proceed as a habeas corpus action. The complainant had severely compromised peripheral veins, and Alabama planned to apply an invasive procedure on his arm or leg to enable the injection. He sought to enjoin the procedure, alleging it would violate the Eighth Amendment. The Court observed that the question whether a general challenge to a method of execution must proceed under habeas was a

difficult one. The claim was not easily described as a challenge to the fact or duration of a sentence; yet in a State where the legislature has established lethal injection as the method of execution, "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." *Id.*, at 644.

*Nelson* did not decide this question. The lawsuit at issue, as the Court understood the case, did not require an injunction that would challenge the sentence itself. The invasive procedure in *Nelson* was not mandated by law, and the inmate appeared willing to concede the existence of an acceptable alternative procedure. *Id.*, at 645–646. Absent a finding that the challenged procedure was necessary to the lethal injection, the Court concluded, injunctive relief would not prevent the State from implementing the sentence. Consequently, the suit as presented would not be deemed a challenge to the fact of the sentence itself. See *ibid.*

The decision in *Nelson* also observed that its holding was congruent with the Court's precedents addressing civil rights suits for damages that implicate habeas relief. Those cases provide that prisoners' suits for damages can be barred from proceeding under §1983 when a judgment in the prisoner's favor necessarily implies the invalidity of the prisoner's sentence. See, *e.g.*, *Heck*, 512 U. S., at 487; *Close, supra*, at 751. The action in *Nelson*, however, was not analogous to a damages suit filed to circumvent the limits imposed by the habeas statute. The suit did not challenge an execution procedure required by law, so granting relief would not imply the unlawfulness of the lethal injection sentence. See 541 U. S., at 647.

In the case before us we conclude that Hill's §1983 action is controlled by the holding in *Nelson*. Here, as in *Nelson*, Hill's action if successful would not necessarily prevent the State from executing him by lethal injection.

The complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin the respondents "from executing [Hill] in the manner they currently intend." App. 22 (Complaint ¶20). The specific objection is that the anticipated protocol allegedly causes "a foreseeable risk of . . . gratuitous and unnecessary" pain. *Id.,* at 46 (Application for Stay of Execution and for Expedited Appeal). Hill concedes that "other methods of lethal injection the Department could choose to use would be constitutional," Brief for Petitioner 17, and respondents do not contend, at least to this point in the litigation, that granting Hill's injunction would leave the State without any other practicable, legal method of executing Hill by lethal injection. Florida law, moreover, does not require the Department of Corrections to use the challenged procedure. See Fla. Stat. §§922.105(1), (7) (prescribing lethal injection and leaving implementation to the Department of Corrections). Hill's challenge appears to leave the State free to use an alternative lethal injection procedure. Under these circumstances a grant of injunctive relief could not be seen as barring the execution of Hill's sentence.

One difference between the present case and *Nelson*, of course, is that Hill challenges the chemical injection sequence rather than a surgical procedure preliminary to the lethal injection. In *Nelson*, however, the State argued that the invasive procedure was not a medical operation separable from the lethal injection but rather a "necessary prerequisite to, and thus an indispensable part of, any lethal injection procedure." 541 U. S., at 645. The Court reasoned that although venous access was necessary for lethal injection, it did not follow that the State's chosen means of access were necessary; "the gravamen of petitioner's entire claim" was that the procedure was "gratuitous." *Ibid.* (emphasis deleted). The same is true here. Although the injection of lethal chemicals is an obvious

necessity for the execution, Hill alleges that the challenged procedure presents a risk of pain the State can avoid while still being able to enforce the sentence ordering a lethal injection.

One concern is that the foregoing analysis may be more theoretical than real based on the practicalities of the case. A procedure that avoids the harms Hill alleges, for instance, may be susceptible to attack for other purported risks of its own. Respondents and their supporting *amici* thus contend that the legal distinction between habeas corpus and §1983 actions must account for the practical reality of capital litigation tactics: Inmates file these actions intending to forestall execution, and *Nelson*'s emphasis on whether a suit challenges something "necessary" to the execution provides no endpoint to piecemeal litigation aimed at delaying the execution. Viewed in isolation, no single component of a given execution procedure may be strictly necessary, the argument goes, and a capital litigant may put off execution by challenging one aspect of a procedure after another. The *amici* States point to *Nelson*'s aftermath as a cautionary example, contending that on remand the District Court allowed Nelson to amend his complaint and that litigation over the constitutionality of Alabama's adopted alternative—one that Nelson had previously proposed—continues to this day. See Brief for the State of Alabama et al. 7–14.

Respondents and their supporting *amici* conclude that two different rules should follow from these practical considerations. The United States as *amicus curiae* contends that a capital litigant's §1983 action can proceed if, as in *Nelson, supra*, at 646, the prisoner identifies an alternative, authorized method of execution. A suit like Hill's that fails to do so, the United States maintains, is more like a claim challenging the imposition of any method of execution—which is to say, the execution itself—because it shows the complainant is unable or un-

willing to concede acceptable alternatives "[e]xcept in the abstract." Brief for United States 14.

Although we agree courts should not tolerate abusive litigation tactics, see Part III, *infra*, even if the United States' proposed limitation were likely to be effective we could not accept it. It is true that the *Nelson* plaintiff's affirmative identification of an acceptable alternative supported our conclusion that the suit need not proceed as a habeas action. 541 U. S., at 646 (citing the inmate's complaint and affidavits). That fact, however, was not decisive. *Nelson* did not change the traditional pleading requirements for §1983 actions. If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper. See *id.,* at 644, 646. Cf. *Gonzalez* v. *Crosby,* 545 U. S. ___ (2005). Imposition of heightened pleading requirements, however, is quite a different matter. Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts. See Fed. Rules Civ. Proc. 8 and 9; *Swierkiewicz* v. *Sorema N. A.,* 534 U. S. 506, 512–514 (2002).

Respondents and the States as *amici* frame their argument differently. While not asking the Court in explicit terms to overrule *Nelson*, they contend a challenge to a procedure implicating the direct administration of an execution must proceed as a habeas action. Brief for Respondents 30–31; Brief for the State of Alabama et al. 16–18. They rely on cases barring §1983 damages actions that, if successful, would imply the invalidation of an existing sentence or confinement. See, *e.g.*, *Edwards* v. *Balisok,* 520 U. S. 641 (1997); *Heck*, 512 U. S. 477. Those cases, they contend, demonstrate that the test of whether an action would undermine a sentence must "be applied functionally." Brief for the State of Alabama et al. as *Amici Curiae* 16. By the same logic, it is said, a suit

should be brought in habeas if it would frustrate the execution as a practical matter.

This argument cannot be squared with *Nelson*'s observation that its criterion—whether a grant of relief to the inmate would necessarily bar the execution—is consistent with *Heck*'s and *Balisok*'s approach to damages actions that implicate habeas relief. *Nelson, supra,* at 646–647. In those cases the question is whether "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity" of the confinement or sentence. *Balisok, supra*, at 645. As discussed above, and at this stage of the litigation, the injunction Hill seeks would not necessarily foreclose the State from implementing the lethal injection sentence under present law, and thus it could not be said that the suit seeks to establish "unlawfulness [that] would render a conviction or sentence invalid." *Heck, supra*, at 486. Any incidental delay caused by allowing Hill to file suit does not cast on his sentence the kind of negative legal implication that would require him to proceed in a habeas action.

## III

Filing an action that can proceed under §1983 does not entitle the complainant to an order staying an execution as a matter of course. Both the State and the victims of crime have an important interest in the timely enforcement of a sentence. *Calderon* v. *Thompson,* 523 U. S. 538, 556 (1998). Our conclusions today do not diminish that interest, nor do they deprive federal courts of the means to protect it.

We state again, as we did in *Nelson*, that a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts. 541 U. S., at 649–650. See *In re Blodgett,* 502 U. S. 236, 239–240 (1992)

*(per curiam); Delo* v. *Stokes,* 495 U. S. 320, 323 (1990) *(per curiam)* (KENNEDY, J., concurring). Thus, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits. See *Barefoot* v. *Estelle,* 463 U. S. 880, 895–896 (1983). See also *Mazurek* v. *Armstrong,* 520 U. S. 968, 972 (1997) *(per curiam)* (preliminary injunction not granted unless the movant, by a clear showing, carries the burden of persuasion).

A court considering a stay must also apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson, supra*, at 650. See also *Gomez* v. *United States Dist. Court for Northern Dist. of Cal.,* 503 U. S. 653, 654 (1992) *(per curiam)* (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay).

After *Nelson* a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day. See, *e.g.*, *Hicks* v. *Taft*, 431 F. 3d 916 (CA6 2005); *White* v. *Johnson*, 429 F. 3d 572 (CA5 2005); *Boyd* v. *Beck*, 404 F. Supp. 2d 879 (EDNC 2005). Although the particular determinations made in those cases are not before us, we recognize that the problem they address is significant. Repetitive or piecemeal litigation presumably would raise similar concerns. The federal courts can and should protect States from dilatory or speculative suits, but it is not necessary to reject *Nelson* to do so.

The equities and the merits of Hill's underlying action are also not before us. We reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*