BYE, Circuit Judge,
with whom MURPHY and KELLY, Circuit Judges, join,
dissenting.
The constitutionality of the death penalty itself is not before us in this case, and we proceed on the assumption the death penalty is constitutional. While it follows there must be a constitutional means of carrying out a death sentence, it has not been determined that Missouri’s current execution protocol is constitutional. The district court erred in dismissing the death-row inmates’ suit, and the death-row inmates should have the opportunity to conduct discovery and fully litigate then-claims. I therefore respectfully dissent.
I
I disagree with the entirety of Part II of the majority’s opinion, which dismisses the death-row inmates’ Eighth Amendment claim. The majority provides two alternative reasons for dismissing the suit: (1) as a matter of law, the death-row inmates’ claim regarding the substantial risk of severe pain imposed by Missouri’s execution protocol is inadequately pled; and (2) the death-row inmates have failed to adequately plead a readily-available alternative method of execution.
A
The majority first holds the death-row inmates have failed to plead sufficient factual matter on the risk of harm to state a plausible claim of relief. Federal Rule of Civil Procedure 8(a)(2) requires only “a short and plain statement of the claim showing that the pleader is entitled to relief.” To withstand the State’s Rule 12(b)(6) motion, the complaint must contain sufficient factual allegations to “state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) *1115 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955).
“[T]aking all facts alleged in the complaint as true, and making reasonable inferences in favor of the nonmoving party,” the death-row inmates have sufficiently pled their Eighth Amendment claim. Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir.) cert. denied, - U.S. -, 135 S.Ct. 361, 190 L.Ed.2d 251 (2014). The death-row Inmates’ complaint alleges the compounded pentobarbital used by Missouri creates a substantial risk of harm and inflicts a substantial risk of severe pain. The death-row inmates have also shown the risk of pain is objectively intolerable.
The death-row inmates’ second amended complaint includes thirty-two attached exhibits, including declarations and affidavits from medical professionals. The pleadings demonstrate substantial concerns with compounded pentobarbital, including potency levels, contamination, pH levels, and shelf-life. Despite such pleadings, the majority concludes these potentialities are hypothetical and do not “rise[ ] to the level of ‘sure or very likely’ to cause serious harm or severe pain.” The majority takes offense at the death-row inmates’ “allegations of generalized harms” from compounded pentobarbital, but such allegations are exactly what must be pled to survive a Rule 12(b)(6) motion to dismiss. Rule 8 only requires “a short and plain statement” showing the death-row inmates are entitled to relief. No higher pleading standard is applicable to this suit. Cf. Fed.R.Civ.P. 9(b) (establishing heightened pleading standards in certain cases, such as fraud or mistake). The death-row inmates could not possibly include allegations more specific to the compounding done for or by Missouri without the benefit of discovery. To know about Missouri’s particular compounding procedure and the particular dangers of such a procedure, the death-row inmates need discovery about the various sources of the drugs, how the drugs are compounded, whether the compounded drugs are tested for potency, contamination, or pH levels, and how and for how long the compounded drugs are stored. Missouri has steadfastly refused to disclose any information related to the compounded pentobarbital. See e.g., In re Lombardi, 741 F.3d 888, 889 (8th Cir.), reh’g denied, 741 F.3d 903 (8th Cir.) and cert. denied sub nom. Zink v. Lombardi, — U.S. -, 134 S.Ct. 1790, 188 L.Ed.2d 760 (2014) (ruling in favor of Missouri in an appeal “to prohibit the district court from enforcing orders that [the State] must disclose in civil discovery, for use by opposing counsel, the identities of (1) the physician who prescribes the chemical used in Missouri executions, (2) the pharmacist who compounds the chemical, and (3) the laboratory that tests the chemical for potency, purity, and sterility”). It is not the death-row inmates’ burden at the pleading stage to show their claims are “sure or very likely;” the death-row inmates must merely show they have stated a claim for relief.
The majority is unconcerned with expert opinions and a host of other evidence which shows improperly compounded pentobarbital would “sure or very likely” cause unconstitutionally painful deaths. The majority acknowledges this evidence exists but focuses on the one thing the death-row inmates cannot know at this stage: “specific factual allegations regarding the production of the pentobarbital” to be used in their executions. Because the death-row inmates have adequately pled that improperly compounded- pentobarbital is sure or very likely to cause pain and suffering at an unconstitutional level, the death-row inmates have pled enough to survive a motion to dismiss under Rule 12(b)(6). Thus, the death-row’ inmates *1116 should be allowed to utilize discovery in the normal course of litigation to determine the actual process used by Missouri’s current compounding pharmacies.
B
In an alternative holding on the death-row inmates’ Eighth Amendment claim, the majority finds the death-row inmates failed to plead a specific readily-available alternative method of execution and finds such a failure fatal to this suit. I disagree.
In Hill v. McDonough, 547 U.S. 573, 576, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), the Supreme Court examined whether a death-row inmate challenging Florida’s execution protocol had a cognizable suit under 42 U.S.C. § 1983, or whether such a claim needed to be brought under 28 U.S.C. § 2254. The Supreme Court clarified that a challenge to a state’s execution procedure may proceed under § 1983, particularly when a “[cjomplaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin [the State] from executing [the plaintiff] in the manner they currently intend.” Hill, 547 U.S. at 580, 126 S.Ct. 2096 (internal quotation marks omitted). In explaining the requirements for a § 1983 challenge to execution protocols, the Supreme Court considered and rejected the proposition that “a capital litigant’s § 1983 action can proceed [only] if ... the prisoner identified an alternative, authorized method of execution.” Id. at 582, 126 S.Ct. 2096. In rejecting that proposition, the Supreme Court explained “[i]f the relief sought would foreclose execution, re-characterizing a complaint as an action for habeas corpus might be proper.” Id. “Imposition of heightened pleading requirements, however, is quite a different matter. Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts.” Id. (citing Fed.R.Civ.P. 8 and 9; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).
A year later, the Supreme Court addressed the pleading requirements of exhaustion under the Prison Litigation Reform Act in Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The Supreme Court, relying on the Federal Rules of Civil Procedure and rejecting a heightened pleading requirement, found the usual practice under the Federal Rules should be followed in § 1983 suits. The Supreme Court thereafter reaffirmed the pleading requirements for death-row inmates: “And just last Term, in Hill ..., we unanimously rejected a proposal that § 1983 suits challenging a method of execution must identify an acceptable alternative.” Id. at 212, 127 S.Ct. 910. In addressing the pleading requirements for death-row inmates challenging a method of execution, the Supreme Court has been clear: there is no heightened pleading rule requiring inmates to identify any alternative method of execution.
• The majority dismisses these clear statements by the Supreme Court, and instead relies on Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), to justify the imposition of a heightened pleading standard. The Baze challenge to Kentucky’s three-drug execution protocol came to the Supreme Court in a declaratory judgment action after “[t]he trial court held extensive hearings and entered detailed findings of fact and conclusions of law.” Id. at 41, 128 S.Ct. 1520. The death-row inmates in Baze, challenging Kentucky’s execution protocol, alleged a readily-available alternative. The Supreme Court held “a condemned prisoner cannot successfully challenge a State’s method of execution merely by *1117 showing a slightly or marginally safer alternative.” Id. at 51, 128 S.Ct. 1520. Rather, the Supreme Court established that when an alternative method of execution is proposed, “the proffered alternatives must effectively address a substantial risk of serious harm.” Id. at 52, 128 S.Ct. 1520 (internal quotation marks omitted). And, if a death-row inmate puts forward such a proposed alternative, it must be “feasible, readily implemented, and ... significantly reduce a substantial risk of severe pain.” Id.
Baze does not establish the standard for all execution-protocol challenges. Instead, Baze establishes that when death-row inmates can show a readily-available alternative with sufficient documented advantages, “a State’s refusal to change its method can be viewed as ‘cruel- and unusual’ under the Eighth Amendment.” 553 U.S. at 52, 128 S.Ct. 1520. Baze reaches no further than this holding. Baze did not purport to limit Eighth Amendment challenges of execution protocols to only those cases where death-row inmates propose an alternative method, and Baze did not change the pleading requirements for Eighth Amendment cases.
Despite the limited nature of Baze, the majority relies on Baze to establish that death-row inmates must plead a feasible and readily-available alternative method of execution. It is troubling the majority relies on Baze when Baze does not mention pleading requirements or the Federal Rules of Civil Procedure. Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) (“Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.”). But perhaps most troubling is the majority’s reliance on Baze when Baze does not even mention Hill or Jones. Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) (“Th[e Supreme Court] does not normally overturn .... earlier authority sub silentio....”).
The Supreme Court warns “that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns.” Jones, 549 U.S. at 212, 127 S.Ct. 910. Despite this rule, the majority bases its decision on policy considerations: whether discovery and litigation would pressure Missouri’s suppliers and agents to discontinue providing the drugs for executions. The question of whether discovery is appropriate or necessary is not currently before this court. Neither is the question of an injunction about the potential harm the State might suffer from disclosure of drug providers. The majority appears to impose a heightened pleading standard for fear that this suit would otherwise eventually require the disclosure of information which it fears would hamper Missouri’s ability to carry out executions. This is not a reason to impose a heightened pleading standard in opposition to Supreme Court precedent and the Federal Rules of Civil Procedure.
If policy concerns were relevant to the establishment of case-by-case pleading 'standards, policy concerns would weigh in favor of allowing this suit to proceed. It is troubling that under the majority’s rule, the constitutionality of an execution method is determined not by the pain and suffering caused by that method, but rather by what resources a death-row inmate can garner to show an available alternative. If the manufacturers of safer drugs were willing to provide Missouri with execution drugs, Missouri’s current execution protocol would likely be held unconstitutional. See Baze, 553 U.S. at 52, 128 S.Ct. 1520 (discussing requirements for a § 1983 *1118 suit when an alternative method of execution is readily available). In no other area do the private acts of third-parties so influence the determination of whether a government act is unconstitutional. Making it even more difficult for death-row inmates, they now must surpass these barriers at the pleading stage, rather than at the summary judgment stage after the completion of discovery.
Simply put, neither the Constitution nor the Federal Rules of Civil Procedure require a plaintiff challenging the constitutionality of government actions to simultaneously suggest a remedy — a remedy which cannot be to simply stop the unconstitutional activity. Such a heightened pleading standard has not been required in other constitutional cases, and should not be required here. Based on the foregoing reasons, I dissent from the imposition of any heightened pleading standards when death-row inmates challenge a state’s method of execution.
C
Although I believe the pleading requirement imposed by the majority is an incorrect application of the law, I recognize my position in the minority and therefore find it prudent to comment on the resolution of this case. Even if the majority is correct in imposing this additional pleading requirement, it is improper to dismiss the death-row inmates’ suit at this juncture. Rather, the matter should be remanded for the death-row inmates to amend their complaint because the death-row inmates’ second amended complaint does, in fact, satisfy the pleading requirements previously suggested by the Eighth Circuit.
In my view, in denying rehearing in the case of In re Lombardi the Eighth Circuit clarified that death-row inmates alleging an Eighth Amendment violation based on the method of execution must, in their pleadings, (1) “concedef ] that ‘other methods of lethal injection the Department could choose to use would be constitutional,’ ” In re Lombardi 741 F.3d 903, 905 (8th Cir.2014) (en banc) (quoting Hill, 547 U.S. at 580, 126 S.Ct. 2096); and (2) “allege[ ] ‘that the challenged procedure presents a risk of pain the State can avoid while still being able to enforce the sentence ordering a lethal injection,’ ” id. (quoting Hill, 547 U.S. at 581, 126 S.Ct. 2096). In their second amended complaint, the death-row inmates “concede that other methods of lethal injection the Department could choose to use would be constitutional.” Zink v. Lombardi No. 12-4209, Doc. 338 at 202 (W.D.Mo. Feb. 2, 2014). Thus, the death-row inmates pleaded exactly what In re Lombardi required of them: a concession “that other methods of lethal injection the Department could choose to use would be constitutional.” 741 F.3d at 905 (internal quotation marks omitted).
The Eighth Circuit now changes, once again, the pleading requirements for an Eighth Amendment claim. Because the death-row inmates complied with In re Lombardi, and because the Eighth Circuit is for the first time imposing a stricter pleading requirement, a remand is proper. The death-row inmates should have the opportunity to plead a named alternative method before the complaint is dismissed. However, in light of today’s ruling dismissing the complaint, the death-row inmates, if they choose to do so, will have to settle for initiating new litigation in the district court and filing a complaint which complies with the newly-established pleading standards. For example, if the death-row inmates desire, the death-row inmates could propose as an available alternative an execution protocol using pentobarbital which was properly compounded at an FDA-approved compounding pharmacy, and has *1119 thereafter been tested for identity, potency, purity, and contamination.
D
The majority also extends the imposition of a heightened pleading requirement beyond the death-row inmates’ Eighth Amendment claims. Without an explanation of this extension, the majority resolves the death-row inmates’ medical needs claim “[f]or reasons discussed in Part II.” The majority also dismisses the death-row inmates’ due process claim at least in part based on the death-row inmates’ failure to “plead[ ] a deprivation of "rights under the Eighth Amendment.” I disagree with any extension of the heightened pleading requirement, and dissent from these portions of the majority’s opinion.
II
The majority opinion establishes heightened pleading requirements for death-row inmates challenging a state’s method of execution under the Eighth Amendment. This imposition is in opposition to governing Supreme Court precedent and the Federal Rules of Civil Procedure. In other words, the Eighth Circuit now prevents death-row inmates from truly accessing the federal courts: a death-row inmate cannot benefit from discovery and is prohibited from challenging even a truly unconscionable method of execution if no other methods are readily available and obvious at the pleading stage.
The death-row inmates have established the risk of using alleged compounded pentobarbital to carry out an execution, and have conceded other forms of execution are constitutional. Therefore, I would reverse the district court, stay the executions of the death-row inmates pending resolution of the suit, and remand for the district court to conduct discovery in its usual and normal course of business.