**Cecil CLAYTON, Petitioner–Appellant**

v.

**Al LUEBBERS, Respondent–Appellee.**

**No. 15–1576.**

United States Court of Appeals,
Eighth Circuit.

Submitted: March 17, 2015.

Filed: March 17, 2015.

Elizabeth Unger Carlyle, Susan M. Hunt, Kansas City, MO, for appellant.

Caroline M. Coulter, Gregory M. Goodwin, Asst. Attys. Gen., Jefferson City, MO, (Chris Koster, Atty. Gen., on the brief), for appellee.

Before LOKEN, BYE, and SMITH, Circuit Judges.

PER CURIAM.

Cecil Clayton moves for stay of his execution scheduled for March 17, 2015, at 6:00 p.m., pending full briefing and argument of his appeal from the district court's denial of his second-in-time federal habeas corpus petition and supplemental petition raising incompetence to be executed.

## I.

Clayton filed a petition for writ of habeas corpus in the Missouri Supreme Court on March 10, 2015, claiming that he is not competent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), *Panetti v. Quarterman*, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Missouri Revised Statutes § 552.060.1 (2000). The Missouri Supreme Court denied his petition on March 14, 2015.

In his federal habeas corpus petition, Clayton claims that he is not competent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and *Panetti v. Quarterman*, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). He also claims that he cannot be executed because he is intellectually disabled under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The district court denied the petition, finding that it could not conclude under the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standards that the [Missouri Supreme Court's] decision was contrary to clearly established Federal law, as determined by the United States Supreme Court; involved an unreasonable application of clearly established Federal law; or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## II.

"[A] stay of execution is an equitable remedy." *Hill v. McDonough*, 547 U.S. 573, 584, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006) (citation omitted). Prior to granting a stay of execution, a court must consider "the likelihood of success on the merits," "the relative harms to the parties," and "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649–50, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004).

Having reviewed Clayton's petition, we conclude that he is unlikely to succeed on the merits of his habeas claims. Applying the "highly deferential standard set forth" in AEDPA, *see Pederson v. Fabian*, 491 F.3d 816, 824 (8th Cir.2007), we agree with the district court that the Missouri Supreme Court's decision (1) was not "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," (2) did not involve an "unreasonable application of" clearly established Federal law, and (3) "was [not] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(3).

## III.   *Conclusion*

Accordingly, we deny Clayton's motion for stay of execution.

BYE, Circuit Judge, dissenting.

I would grant Cecil Clayton's petition for writ of habeas corpus and stay Clayton's execution while the appeal proceeds. I believe the Supreme Court of Missouri unreasonably applied the governing legal standards to the facts of Clayton's case. Therefore, I respectfully dissent.

Because we review petitions for writ of habeas corpus under standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *Edwards v. Roper,* 688 F.3d 449, 453 (2012), Clayton is entitled to relief if he demonstrates the adjudication by the Supreme Court of Missouri "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). I believe Clayton has satisfied this burden.

"[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Ford v. Wainwright,* 477 U.S. 399, 409–10, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). In *Ford,* Justice Powell stated in a concurrence to the four-justice plurality opinion that prisoners are insane for the purposes of execution if they are "unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422, 106 S.Ct. 2595. Justice Powell also opined a state "may require a substantial threshold showing of insanity merely to trigger the hearing process." *Id.* at 426, 106 S.Ct. 2595.

In *Panetti v. Quarterman,* 551 U.S. 930, 948–62, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the Supreme Court clarified *Ford's* competency and substantial threshold showing standards. Considering delusions suffered by Panetti, the Supreme Court concluded:

> The principles set forth in *Ford* are put at risk by a rule that deems delusions relevant only with respect to the State's announced reason for a punishment or the fact of an imminent execution ... as opposed to the real interests the State seeks to vindicate. We likewise find no support elsewhere in *Ford,* including in its discussions of the common law and the state standards, for the proposition that a prisoner is automatically foreclosed from demonstrating incompetency once a court has found he can identify the stated reason for his execution. A prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it. *Ford* does not foreclose inquiry into the latter.

> \*　　\*　　\*

> It is therefore error to derive from *Ford,* and the substantive standard for incompetency its opinion broadly identify, a strict test for competency that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted.

*Id.* at 959, 960, 127 S.Ct. 2842. The Supreme Court further confirmed once a petitioner has made the substantial threshold showing when he files his motion with the state court, under *Ford,* he is constitutionally entitled to an evidentiary hearing. *Id.* at 950, 127 S.Ct. 2842.

In Clayton's case, the Supreme Court of Missouri properly identified the standard by which to determine competency when it cited *Ford* and *Panetti.* Thereafter, however, the Supreme Court of Missouri's denial of Clayton's petition without conducting an evidentiary hearing was an unreasonable application of *Ford's* and

*Panetti's* tenets. Evidence in the record indicates Clayton is missing approximately eight percent of his brain and suggests he suffers from a paranoid-type schizophrenic disorder, chronic brain syndrome, and a psychotic disorder characterized by thought disorganization, depression, agitation, hallucinations, delusions, regressive behavior, and dementia. Dr. William S. Logan, M.D., a psychiatrist, has evaluated Clayton on several occasions and concluded Clayton has a delusional disorder which prevents him from fully understanding his execution. Dr. Logan opined Clayton lacks a rational understanding or comprehension of the meaning or purpose of his punishment. Although Clayton is able to relay Missouri's plans to execute him for killing Deputy Castetter, Clayton believes his legal situation is instead a test of faith and that God will not allow the punishment to occur as God has chosen him for another mission. Accordingly, Dr. Logan believes Clayton is not competent to be executed. Another of Clayton's experts, Dr. Daniel Foster, Ph. D., shares Dr. Logan's conclusions about Clayton's competency. Dr. Foster, after evaluating Clayton, opined Clayton suffers from depressive episodes accompanied by insomnia and visual and verbal hallucinations, along with delusional and paranoid qualities. Dr. Foster concluded Clayton is unable to perceptually grasp requests for clemency or extenuation as a result of his delusions or to fully participate, cooperate, or comprehend his legal status or the legal process. In addition, several of Clayton's fellow inmates and Clayton's siblings reported information attesting to Clayton's incompetency which supports Dr. Logan's and Dr. Foster's conclusions. Regardless of whether Clayton's incompetency petition would ultimately be granted, this evidence undoubtedly demonstrates a substantial threshold showing and therefore warrants an evidentiary hearing.

For these reasons, I would grant Clayton's petition for writ of habeas corpus and stay his execution pending the resolution of this issue.