# SUPREME COURT OF THE UNITED STATES

## VICTOR SALDAÑO *v.* TEXAS

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 25–5749.   Decided June 22, 2026

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of certiorari.

Under *Atkins* v. *Virginia*, 536 U. S. 304 (2002), the Eighth Amendment to the U. S. Constitution forbids the execution of intellectually disabled individuals. Here, every expert to have evaluated petitioner Victor Saldaño has concluded that he is intellectually disabled. As a result, both Saldaño and the State of Texas asked the Texas Court of Criminal Appeals (TCCA) to remand for a trial court to review the relevant evidence and decide whether Saldaño can be executed consistent with the Eighth Amendment. Yet the TCCA refused that modest step. I would have granted certiorari and summarily vacated that decision to ensure that Saldaño, the State, and the Texas courts have the opportunity to determine Saldaño's *Atkins* claim on the merits and assess whether executing him would, in fact, violate the Eighth Amendment.

In 1996, Saldaño was convicted of capital murder and sentenced to death. He initially sought postconviction relief in both state and federal courts, and a federal habeas court granted resentencing after finding that Saldaño's penalty phase had been tainted by testimony from the State's expert that Saldaño posed a risk of future dangerousness in part due to his race. Saldaño was resentenced to death in 2004 and filed an initial state habeas application in 2007 and a subsequent application in 2008, both of which were

denied.  Saldaño did not raise a claim of intellectual disability under *Atkins* in any of these proceedings.

In 2021, after the State sought an execution date for Saldaño, Saldaño filed a motion arguing that he was incompetent to be executed under *Ford* v. *Wainwright*, 477 U. S. 399 (1986), because of his serious mental health issues, including schizophrenia.  In support, Saldaño also submitted evidence that he had recently received a full-scale IQ score of 73 on the WAIS-IV IQ test, which is a widely used test for assessing intellectual disability.  In response, the State had its own expert administer another WAIS-IV IQ test, which produced a full-scale IQ score of 74.  Given these low scores (with standard-error ranges below 70), the parties agreed to pause the competency proceedings and address the possibility that, separate and apart from his competency to be executed, Saldaño may be intellectually disabled under *Atkins*.

After a thorough investigation, experts for both Saldaño and the State analyzed Saldaño's IQ scores and other evidence of intellectual disability, including declarations from over a dozen individuals who have known Saldaño throughout his life.  Assessing this evidence, all three experts (two for Saldaño and one for the State) concluded that Saldaño meets the standard for intellectual disability established by *Atkins*.  In addition to his IQ scores, which all three experts agreed reflected significantly subaverage intellectual functioning, the evidence showed severe deficits in adaptive functioning.  For instance, from childhood, Saldaño was perceived as "'slow,'" and he had to repeat sixth grade. App. to Pet. for Cert. 97–98 (Pet. App.).  He had difficulty bathing, feeding, and clothing himself.  He once "'spent two days without food, a bathroom, or anything else'" inexplicably waiting outside his uncle's house even though other family members lived nearby.  *Id.*, at 96.  He was also twice struck by cars because he could not grasp his family's explanations of how to avoid cars in the street.

In 2024, with both the State's expert and his own experts concluding that he was intellectually disabled for purposes of the Eighth Amendment, Saldaño filed a second subsequent habeas application with the TCCA. Under Texas Code of Crim. Proc. Ann., Art. 11.071, §5(a) (Vernon 2015), a subsequent application is generally impermissible unless one of several exceptions applies. Saldaño argued that his subsequent application could go forward under an exception to that general rule, and that a trial court should hold a hearing and address the merits of his claim considering all the evidence he had compiled.

Specifically, Saldaño argued that, under §5(a)(3), he could establish by "clear and convincing evidence" that "no rational juror would have" imposed the death penalty, given that "no rational juror could" have done so consistent with the Eighth Amendment. *Ex parte Blue*, 230 S. W. 3d 151, 161–162 (Tex. Crim. App. 2007) (emphasis deleted). To proceed to a merits determination under §5(a)(3), the TCCA has previously held, an applicant need not prove the merits of an *Atkins* claim; he need only make a "threshold presentation of evidence that, if true," would support an *Atkins* claim by clear and convincing evidence. *Id.*, at 163. Notably, the State supported Saldaño's application, arguing that he satisfied §5(a)(3) and asking the TCCA to remand the case to the trial court for an evidentiary hearing and merits determination of Saldaño's *Atkins* claim.*

———————

*Saldaño also sought to proceed under §5(a)(1), which he argued independently provided a gateway to a merits determination. Relying on §5(a)(1), he contended that the "factual or legal basis for the claim" was unavailable when he filed his earlier habeas applications. That was because his *Atkins* claim, if filed before 2017, would have failed under Texas's framework for assessing intellectual disability, which this Court later held unconstitutional in *Moore* v. *Texas*, 581 U. S. 1 (2017) (*Moore I*). In several previous cases, the TCCA had held that *Moore I* had created a new, previously unavailable "legal basis" for an *Atkins* claim for purposes of §5(a)(1). See, *e.g.*, *Ex parte Segundo*, 663 S. W. 3d 705, 705–

The TCCA, however, held in a single paragraph that Saldaño did not satisfy §5(a)(3). See Pet. App. 4 (holding without further explanation that Saldaño did not "plea[d] 'sufficient specific facts that, if true,'" would prove his *Atkins* claim). Now in this Court, Saldaño and the State both argue that this holding was error given the significant evidence of Saldaño's intellectual disability and that the evidence "warrants litigation of his *Atkins* claim on the merits." Brief in Opposition 9.

This Court should grant the parties' mutual request to "vacate the TCCA's dismissal" and "remand" so that the Texas courts can resolve Saldaño's claim on the merits. *Id.*, at 10. To start, the TCCA's §5(a)(3) holding on whether the alleged facts, if true, clearly and convincingly establish intellectual disability under *Atkins* presents a federal question reviewable by this Court. See *Glossip* v. *Oklahoma*, 604 U. S. 226, 242–243 (2025). Further, assuming that all Saldaño's factual allegations are true, he has plainly made the "threshold" *Atkins* showing that Texas law requires. *Blue*, 230 S. W. 3d, at 163; see Pet. App. 4 (citing *Blue*). Every expert in the case agrees that Saldaño's IQ scores satisfy the criteria for intellectual disability, that his severe conceptual, social, and practical deficits show serious impairment of adaptive functioning, and that all these deficits have been present since his childhood. Those findings are consistent with this Court's precedents. See, *e.g.*, *Brumfield* v. *Cain*, 576 U. S. 305, 315 (2015) (describing an IQ score of 75 as "squarely in the range of potential intellectual disability"); *Moore* v. *Texas*, 586 U. S. 133, 134–135, 142 (2019) (*per curiam*) (holding that an applicant was intellectually disabled given IQ scores of 74 and 78 and significant evidence of adaptive deficits); cf. *Moore I*, 581 U. S., at 10,

––––––––––

706 (2022); see also App. to Pet. for Cert. 105–107, and n. 6 (collecting cases). Although the State supported relief under §5(a)(1) below, too, the TCCA also denied Saldaño's application on this basis.

14–15 (requiring consideration of adaptive functioning for individual with IQ score of 74 and standard-error range of 69 to 79). Assuming the truth of this uncontradicted evidence, as is required at this stage, it is difficult to see any way in which Saldaño could have failed to make at least the threshold showing of intellectual disability that is sufficient to proceed to a merits determination.

The Court's refusal to allow that merits determination to proceed not only does a profound disservice to Saldaño, who now might be executed without any court ever determining whether he is, in fact, intellectually disabled. It also severely undermines the State's interest in ensuring the legitimacy of its criminal system. In that system, the prosecutor serves as "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger* v. *United States*, 295 U. S. 78, 88 (1935). Much as the State has a "strong interest in enforcing its criminal judgments," *Hill* v. *McDonough*, 547 U. S. 573, 584 (2006), it has an equally strong interest in maintaining, and demonstrating, the integrity of those judgments. That is why this Court generally requires that "great weight" be afforded to prosecutorial confessions of error. *Young* v. *United States*, 315 U. S. 257, 258 (1942). It is also partially why, when the State does confess error, a reviewing court must explain why such a confession is inadequate to support relief. Cf. *Escobar* v. *Texas*, 598 U. S. \_\_\_ (2023). A court is not bound by the prosecutor's views, but such explanation is necessary to safeguard, among other things, the public perception of fairness in the courts.

Here, the State admirably sought to fulfill its responsibilities by ensuring that, if it is going to take Saldaño's life, that grave act will comport with the Constitution's guarantee against cruel and unusual punishment. The TCCA did not satisfy its reciprocal obligations. Because the Court's refusal to intervene both creates a significant risk that

Saldaño's fundamental rights will be violated in contraven-
tion of the Eighth Amendment and disserves the State's im-
portant interests in preventing that result, I respectfully
dissent from the denial of certiorari.