# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2222
_____

Ernest Lee Johnson,

*Plaintiff - Appellant*,

v.

Anne L. Precythe; Alana Boyles; Stanley Payne,[*]

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: May 16, 2018
Filed: August 27, 2018
_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Ernest Johnson, a prisoner sentenced to death in Missouri, appeals the dismissal of his action challenging the constitutionality of the State's method of execution as applied to him. The district court dismissed Johnson's second amended complaint for

_____

[*]Appellees Precythe, Boyles, and Payne are automatically substituted for their predecessors under Federal Rule of Appellate Procedure 43(c)(2).

failure to state a claim. We conclude that Johnson pleaded a plausible claim for relief under the Eighth Amendment, so we reverse and remand for further proceedings.

I.

Johnson was convicted of three counts of first-degree murder in Missouri state court and sentenced to death. *See State v. Johnson*, 244 S.W.3d 144, 149 (Mo. 2008). He filed this action against Missouri officials in October 2015, approximately two weeks before a scheduled execution on November 3, 2015. Johnson alleged that the State's method of execution—lethal injection with pentobarbital—violates the Eighth Amendment's proscription on cruel and unusual punishment, because there is "a substantial and unjustifiable risk" that a pentobarbital injection will "trigger severe and uncontrollable seizures and convulsions due to his brain defect and unique medical condition."

The district court granted the State's motion to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Applying the Eighth Amendment standard from *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015), the court concluded that Johnson had not identified a feasible, readily implementable alternative method of execution that would significantly reduce a substantial risk of severe pain. The court dismissed the complaint without prejudice, stating that Johnson was free to amend his complaint to remedy its deficiencies. Due to Johnson's imminent execution date, however, the court stated that it was certifying the dismissal order for interlocutory appeal under Federal Rule of Civil Procedure 54(b).

Johnson moved this court to stay his execution pending appeal. This court denied a stay after concluding that Johnson failed to demonstrate a significant possibility of success on either element of his Eighth Amendment claim. *Johnson v. Lombardi*, 809 F.3d 388 (8th Cir. 2015) (per curiam). The Supreme Court, however, granted a stay pending appeal in the Eighth Circuit. *Johnson v. Lombardi*, 136 S. Ct.

443 (2015) (per curiam). The Court observed that a supporting affidavit by a medical expert stated that "[a]s a result of Mr. Johnson's brain tumor, brain defect, and brain scar, a substantial risk of serious harm will occur during his execution as a result of a violent seizure that may be induced by [the] Pentobarbital injection." *Id.* at 443 (alterations in original).

As we observed in *Bucklew v. Lombardi*, 783 F.3d 1120 (8th Cir. 2015) (en banc), "[t]he Court's decision to grant a stay pending appeal reflected its determination that [the movant] had shown 'a significant possibility of success on the merits' of his appeal from the district court's dismissal of his complaint." *Id.* at 1123-24 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). In this case, however, we subsequently dismissed Johnson's appeal for lack of jurisdiction, and did not consider the merits of his complaint at that time. *Johnson v. Lombardi*, 815 F.3d 451 (8th Cir. 2016). We noted that the State had not established a new execution date, and that Johnson was thus "free to move for leave to amend his complaint without the pressure of a scheduled execution." *Id.* at 452.

Back in the district court, Johnson amended his complaint, but the court again dismissed it without prejudice. This time, the court reasoned that Johnson's complaint failed to plead facts that established the likelihood that pentobarbital would cause him to have a mid-execution seizure. The court allowed that it would give Johnson one more opportunity to file an adequately pleaded complaint.

Johnson then filed a second amended complaint. As an exhibit, Johnson attached an affidavit from anesthesiologist Dr. Joel Zivot, who opined about the likelihood that Johnson would suffer a painful seizure if executed by means of pentobarbital. Johnson also attached an Oklahoma study concluding that nitrogen-induced hypoxia, an alternative to lethal injection, would be a humane method of execution.

The district court granted the State's motion to dismiss the latest complaint. The court reasoned that Johnson failed to plead adequately two elements of an Eighth Amendment claim—namely, that pentobarbital was sure or very likely to cause him to suffer severe pain, and that nitrogen-induced hypoxia was a feasible and readily implemented alternative method of execution that would significantly reduce that risk. Johnson appeals, and we review the district court's decision *de novo*. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam).

II.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

At the same time, however, the rules of procedure continue to allow notice pleading through "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555). We assume in our analysis that the factual allegations in the complaint are true. *Twombly*, 550 U.S. at 556.

To prove a claim challenging a method of execution under the Eighth Amendment, a prisoner must first "establish that the method presents a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion)). The risk must be "a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). Second, the prisoner must "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (alteration in original) (quoting *Baze*, 553 U.S. at 52). A plaintiff cannot satisfy this element "merely by showing a slightly or marginally safer alternative." *Id.* (quoting *Baze*, 553 U.S. at 51).

On the first element, Johnson alleged that he was diagnosed with an "atypical parasagittal meningioma brain tumor." A portion of the tumor was removed during a craniotomy procedure in August 2008, but another part remains in Johnson's brain. The surgery also resulted in "scarring tissue" in Johnson's brain and a "significant brain defect." Johnson pleaded that "[t]he brain defect and the scarring tissue that resulted from the craniotomy procedure were not known until an MRI procedure was conducted in April 2011." As a result of his "brain defect, scarring, and tumor," Johnson allegedly has a seizure disorder and has suffered seizures.

After detailing Missouri's lethal injection protocol, Johnson asserted that "there is a substantial and unjustifiable risk that the lethal injection drugs will trigger violent and uncontrollable seizures that are extremely painful and will lead to an ineffective and excruciating execution." Relying on the attached affidavit of Dr. Zivot, the complaint asserts that "a substantial risk of serious harm will occur during his execution as a result of a violent seizure that is induced by pentobarbital."

Dr. Zivot's supporting affidavit states as follows: "As a result of Mr. Johnson's brain tumor, brain defect, and brain scar, a substantial risk of serious harm will occur during his execution as a result of a violent seizure that is induced by Pentobarbital injection. Generalized seizures, such as the one that would occur in Mr. Johnson, are severely painful." This is essentially the same allegation that the Supreme Court cited in support of its decision in 2015 to stay Johnson's execution pending appeal. 136 S. Ct. at 443. The affidavit also explains that Methohexital, "a Barbiturate and close cousin of Pentobarbital," is known to induce seizures in persons *without* pre-existing seizure disorders, and avers that the introduction of barbiturates into the body of a person *with* a pre-existing seizure disorder is more likely to produce seizures.

We think these allegations are sufficient to meet the first element of an Eighth Amendment claim at the pleading stage. Dr. Zivot, as a medical expert, predicts "a violent seizure that is induced by Pentobarbital injection," opines that a seizure "would occur" during Johnson's execution, and states that such seizures are "severely painful." To be sure, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. But Johnson's complaint and Zivot's attached affidavit include factual allegations that a seizure will occur when the State injects pentobarbital and that such a seizure causes severe pain. These allegations are not legal conclusions but statements of fact, and more detailed factual allegations are not required under Rule 12. Insofar as Zivot reasoned by analogy from the effects of a "close cousin" in the barbiturate family, the reliability of his conclusion is a matter to be resolved after the presentation of evidence. For purposes of notice pleading, Johnson has included a plausible allegation that the State's method of execution will cause severe pain. *See Glossip*, 135 S. Ct. at 2737. Whether Johnson can *prove* the claim through Dr. Zivot's testimony or other evidence is a different matter to be addressed at a later stage of the proceedings.

To prove the second element of an Eighth Amendment claim, Johnson must show an alternative method of execution "that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (alteration in original) (quoting *Baze*, 553 U.S. at 52). Johnson alleged that execution by lethal gas—specifically, "nitrogen-induced hypoxia"—is such an alternative.

Johnson pleaded at greater length as follows: (1) "execution by lethal gas is already authorized by Missouri statute," *see* Mo. Rev. Stat. § 546.720.1, (2) "the tools necessary to perform nitrogen-induced hypoxia are easily acquired in the open market," (3) nitrogen gas "is readily available through multiple sources in the United States" and "can be obtained without the need for a license," (4) nitrogen gas can be administered by "the use of a hood, a mask or some other type of medically enclosed device to be placed over the mouth or head of the inmate," and (5) "the use of a nitrogen gas method of execution would not require a gas chamber or the construction of [a] particular type of facility" and "could be administered in the same room or facility now utilized by the Department of Corrections for lethal injection." Johnson further alleged that the use of lethal gas would "significantly reduce the substantial and unjustifiable risk of severe pain" resulting from a pentobarbital injection, because "the use of lethal gas would not trigger the uncontrollable seizures and convulsions." He attached to his complaint an Oklahoma study that found nitrogen-induced hypoxia to be "a humane method to carry out a death sentence."

In the recent case of *Bucklew v. Precythe*, 883 F.3d 1087 (8th Cir.), *cert. granted*, 138 S. Ct. 1706 (2018), the State did not dispute for purposes of that litigation that nitrogen-induced hypoxia is a feasible and readily implemented alternative method of execution. *Id.* at 1094; *see Bucklew v. Lombardi*, No. 14-8000-CV-W-BP, slip op. at 9 (W.D. Mo. June 15, 2017). But in this case, the State does contend that Johnson failed to plead that nitrogen-induced hypoxia is a readily implemented method of execution. According to the State, Johnson's complaint does not include required factual information "that explains how Missouri could take

nitrogen gas from a tank and administer it to an inmate in a way that produces a rapid and painless death." As summarized above, however, Johnson alleged that nitrogen gas is readily available on the open market, could be introduced through a "medically enclosed device to be placed over the mouth or head of the inmate," and would not require construction of a new facility. Under the notice pleading regime of the federal rules, this is sufficient. Johnson need not set forth a detailed technical protocol for the administration of nitrogen gas to state a claim.

The district court concluded that the Oklahoma report attached to Johnson's complaint "actually indicates nitrogen induced hypoxia is not feasible or capable of being readily implemented for use in state executions," but we respectfully disagree. The report does state that "[f]urther study will be necessary to determine the best delivery system" for nitrogen gas. The report also raises the possibility that a gas mask delivery system could be less efficient than a gas bag delivery system. But the report's ultimate conclusion is that execution by nitrogen-induced hypoxia would be "simple to administer." That researchers have yet to decide which is the *best* among several feasible methods of implementation does not definitively refute Johnson's allegation that Missouri could feasibly implement this alternative without undue delay.

The district court also thought it fatal to Johnson's claim that he did not plead facts "indicating Missouri is willing to perform this type of execution, which suggests it may not be feasible." We cannot accept, however, that a State's unwillingness to employ a method that would significantly reduce a substantial risk of severe pain makes the method infeasible. Under the *Glossip/Baze* standard, a State may be obliged under the Constitution to implement an alternative method of execution. *See Baze,* 553 U.S. at 52. Whether Missouri is "willing" to implement an alternative method voluntarily does not determine whether the alternative is feasible.

The State also contends that Johnson did not adequately allege that nitrogen gas would significantly reduce a substantial risk of severe pain. The State suggests that

*McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017) (en banc) (per curiam), forecloses Johnson's claim. *McGehee*, however, arose in a different procedural posture. Several Arkansas prisoners sought a stay of execution after an evidentiary proceeding on the ground that Arkansas's method of execution on its face violated the Eighth Amendment. *Id.* at 490-91. We concluded that the evidence was insufficient to justify a stay, because nitrogen hypoxia had "never been used to carry out an execution" and "[w]ith no track record of successful use," it was "not likely to emerge as more than a 'slightly or marginally safer alternative'" to the State's current method in the ordinary case. *Id.* at 493 (quoting *Glossip*, 135 S. Ct. at 2737).

Johnson is not bound by the pleadings or the evidentiary record in *McGehee*. He has pleaded an as-applied claim based on his medical condition, not a facial challenge to Missouri's ordinary method. He claims that nitrogen hypoxia would ameliorate the risk of severe pain allegedly caused by pentobarbital, because "the use of lethal gas would not trigger the uncontrollable seizures and convulsions." The pleading is sufficient to state a claim that the alternative method would significantly reduce a substantial risk of severe pain for Johnson in his particular circumstances. Again, whether Johnson can *prove* that claim is a different matter that will arise at a later stage of the proceedings.

## III.

The State's last argument for affirmance is that Johnson's complaint is barred by the statute of limitations. A statute of limitations is an affirmative defense that the defendant must plead and prove. But "[a] defendant does not render a complaint defective by pleading an affirmative defense," so the defense ordinarily must be apparent on the face of the complaint to justify dismissal for failure to state a claim. *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). The district court rejected the State's position on the ground that the face of Johnson's complaint did not establish that his claim was barred by the statute of limitations.

In a § 1983 action like this one, the governing statute of limitations "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Missouri, the period is five years. Mo. Rev. Stat. § 516.120(4). Although state law dictates the length of the limitations period, we look to federal common law to determine when a cause of action under § 1983 accrues. *Wallace*, 549 U.S. at 388. The standard rule is that accrual occurs "when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). "[A] plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998); *see also Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (applying the common law "discovery rule" to determine when a § 1983 method-of-execution cause of action accrued).

Johnson claims that his unique medical condition puts him at a substantial risk of suffering severe pain if he is executed by means of pentobarbital. Johnson's cause of action could not have accrued until he discovered, or with due diligence should have discovered, that he suffers from the brain defects that make him vulnerable to seizures. His second amended complaint alleges that "the brain defect and the scarring tissue that resulted from the craniotomy procedure were not known until an MRI procedure was conducted in April 2011." The complaint was filed within five years of April 2011, so it would be timely if that is the accrual date.

The State argues that Johnson could have discovered his condition in 2008 after he underwent brain surgery. The State posits that "[t]he presence of scar tissue after a surgery is obvious and a natural and probable consequence of any surgery." The condition of which Johnson complains, however, is not only scar tissue. He alleges a seizure disorder that is caused by a confluence of factors in his brain. Giving Johnson all reasonable inferences at this stage in the litigation, it is not clear from

Johnson's pleadings that he could have discovered this condition through the exercise of reasonable diligence before his MRI procedure in April 2011. Therefore, Johnson's complaint is not subject to dismissal under Rule 12(b)(6) based on the statute of limitations.

*     *     *

For the foregoing reasons, we reverse the district court's judgment dismissing Johnson's second amended complaint and remand for further proceedings.

_____