# SUPREME COURT OF THE UNITED STATES

ERNEST JOHNSON *v.* ANNE L. PRECYTHE, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 20–287.    Decided May 24, 2021

The petition for a writ of certiorari is denied.

JUSTICE BREYER, dissenting from the denial of certiorari.

I join JUSTICE SOTOMAYOR's dissent. The Eighth Circuit concluded that petitioner Ernest Johnson plausibly claims that because of a brain tumor operation, the State's ordinary execution method, lethal injection of pentobarbital, is cruel. It risks causing him severe and painful seizures. See 954 F. 3d 1098, 1101–1102 (2020); *Johnson* v. *Precythe*, 901 F. 3d 973, 978 (CA8 2018), vacated and remanded, 587 U. S. ___ (2019). Johnson seeks relief to ask instead for what is today a highly unusual method of execution, namely, execution by firing squad, not used in Missouri since 1864 (nor in any State but one since 1913). See Death Penalty Information Center, Methods of Execution (2021), https://www.deathpenaltyinfo.org/executions/methods-of-execution; *id.*, Executions in the U. S. 1608–2002: The ESPY File, Executions by Date 255 (Apr. 10, 2019), https://files.deathpenaltyinfo.org/legacy/documents/ESPYyear.pdf. In other words, he asks that the courts decide between an execution that is "cruel" and one that is "unusual."

For the reasons JUSTICE SOTOMAYOR sets forth, I believe the courts should resolve the merits of Johnson's claim. Under the governing majority opinion in *Bucklew* v. *Precythe*, 587 U. S. ___ (2019), and consistent with my dissent in that case, the Eighth Amendment may not allow Missouri to execute Johnson by pentobarbital. See *id.*, at ___–___ (BREYER, J., dissenting) (slip op., at 7–11) (no "'alternative

method' requirement" where the State's proposed method may cause excessive suffering because of a prisoner's unique medical condition). I simply add that the difficulty of resolving this claim, 27 years after the murders, provides one more example of the special difficulties that the death penalty, as currently administered, creates for the just application of the law. See *United States* v. *Higgs*, 592 U. S. ___, ___–___ (2021) (BREYER, J., dissenting) (slip op., at 3–4); *Glossip* v. *Gross*, 576 U. S. 863, 945–946 (2015) (BREYER, J., dissenting).

# SUPREME COURT OF THE UNITED STATES

### ERNEST JOHNSON *v.* ANNE L. PRECYTHE, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 20–287.  Decided May 24, 2021

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting from the denial of certiorari.

Ernest Johnson is a death row inmate in Missouri who suffers from epilepsy as a result of a brain tumor and damage caused by significant brain surgery. In the operative complaint he filed in 2016, Johnson alleged that he will experience excruciating seizures if Missouri executes him by lethal injection of the drug pentobarbital. Johnson also alleged that Missouri should execute him by nitrogen gas instead, a method of execution authorized by state law. In 2018, the Eighth Circuit held that Johnson fully stated a claim for relief under the Eighth Amendment. *Johnson* v. *Precythe*, 901 F. 3d 973, 978–980.

Subsequently, in another case, *Bucklew* v. *Precythe*, 587 U. S. \_\_\_\_ (2019), this Court held that a State could decline to use nitrogen gas as an alternative method of execution because it lacked a "'track record of successful use.'" *Id.,* at \_\_\_\_ (slip op., at 22). *Bucklew* also announced that, to satisfy the track-record requirement, plaintiffs may look to well-established methods of execution in other States, even if they are not authorized in the State seeking to carry out the relevant execution. *Id.,* at \_\_\_\_ (slip op., at 19). Given this option, the Court expected "little likelihood" that a plaintiff who alleges a serious risk of pain, like Johnson, would be unable to identify an adequate alternative method of execution. *Id.,* at \_\_\_\_ (slip op., at 20).

Faced with these changes in the law, Johnson sought to

amend his complaint to plead the firing squad as an alternative method of execution. Although not authorized in Missouri, the firing squad has a long history of successful use. See *id.,* at ___ (slip op., at 13). Indeed, during oral arguments in *Bucklew*, Missouri itself suggested the firing squad as an available alternative. See *id.,* at ___ (KAVANAUGH, J., concurring) (slip op., at 2). The Eighth Circuit, however, denied Johnson leave to amend his complaint. See 954 F. 3d 1098, 1103 (2020). In its view, Johnson should have pleaded the firing squad earlier, even before *Bucklew*. Given that view, and in the interest of resolving Johnson's claim "'fairly and expeditiously,'" the Eighth Circuit closed the case. 954 F. 3d, at 1103 (quoting *Bucklew*, 587 U. S., at ___ (majority opinion) (slip op., at 30)).

The Eighth Circuit's decision was an abuse of discretion. Leave to amend a complaint must be granted "when justice so requires." Fed. Rule Civ. Proc. 15(a)(2). Justice requires it here. The Eighth Circuit's decision punishes Johnson for failing to anticipate significant changes in the law brought about by *Bucklew*. Worse, it ensures that Johnson's claim will never be heard on the merits. Missouri is now free to execute Johnson in a manner that, at this stage of the litigation, we must assume will be akin to torture given his unique medical condition. To dispose of the case more quickly, the Eighth Circuit has sacrificed the Eighth Amendment's chief concern for preventing cruel and unusual punishment.

Accordingly, I dissent from the denial of Johnson's petition for a writ of certiorari. I would grant Johnson's petition, vacate the judgment below, and remand with instructions that Johnson be given leave to amend.

## I

### A

Johnson's second amended complaint alleges that he was

diagnosed with a brain tumor and underwent major surgery in 2008. Although doctors removed roughly one-fifth of Johnson's brain tissue, they could not eliminate the tumor. The surgery scarred Johnson's brain tissue, leaving a lasting brain defect. The tumor cells, scar tissue, and brain defect have together caused Johnson to suffer from epilepsy, which produces violent, uncontrollable, and painful seizures.

Johnson alleges that, because of his unique medical condition, injecting him with the drug pentobarbital, as Missouri's lethal injection protocol requires, will create a "'substantial'" risk that he will suffer an extraordinarily painful seizure. App. to Pet. for Cert. 25a. Pentobarbital is part of a class of medications known to trigger seizures, even in those without seizure disorders. See *id.,* at 15a. Pentobarbital also has "an anti-[analgesic] effect," which means that "it exaggerates pain." *Id.,* at 27a. As a result, Johnson claims that executing him using pentobarbital is "'sure or very likely to'" trigger an exceptionally painful seizure and cause him "'serious and needless pain.'" *Ibid.*

On the other hand, Johnson alleges that executing him using nitrogen gas would be painless. Notably, "Missouri law already permits execution by lethal gas, Mo. Rev. Stat. §546.720.1, and nitrogen, which is used commonly in welding and cooking, is easy to obtain." *Id.,* at 28a. By fitting a hood or mask over Johnson's head and administering the gas, Missouri could induce lethal hypoxia without triggering Johnson's seizure disorder. *Ibid.*

## B

Johnson brings an as-applied Eighth Amendment challenge to Missouri's lethal injection protocol. Such a claim has two elements. First, Johnson must allege (and later prove) that the State's method of execution poses a "substantial risk of severe pain." *Glossip* v. *Gross*, 576 U. S. 863, 877 (2015) (internal quotation marks omitted). Second, he

must propose an alternative method of execution that is "feasible" and "readily implemented," and will "significantly reduc[e]" the risk of severe pain. *Ibid.* (alteration and internal quotation marks omitted).

In 2017, the District Court concluded that Johnson had failed to allege either element adequately. The Eighth Circuit reversed. 901 F. 3d, at 976. As to the first element, the Eighth Circuit explained that Johnson had plausibly alleged "that a seizure will occur when the State injects pentobarbital and that such a seizure causes severe pain." *Id.,* at 978. As to the second element, the court cited Johnson's detailed allegations that "nitrogen gas is readily available on the open market, could be introduced through a 'medically enclosed device to be placed over the mouth or head of the inmate,' and would not require construction of a new facility." *Id.,* at 979. Under the law at the time, "this [was] sufficient." *Ibid.*

Missouri sought review in this Court. While Missouri's petition was pending, this Court decided *Bucklew.* In that case, another death row inmate challenged Missouri's lethal injection protocol under the Eighth Amendment and proposed nitrogen gas as an alternative. This Court rejected the claim. Among other things, this Court concluded that Missouri had a legitimate reason for declining to use nitrogen gas because it was "an entirely new method—one that had never been used to carry out an execution and had no track record of successful use." 587 U. S., at ___ (slip op., at 22) (internal quotation marks omitted). Even assuming nitrogen gas was a readily available alternative, this Court held that Bucklew had failed to prove that nitrogen gas would significantly reduce a substantial risk of severe pain. *Id.,* at ___ (slip op., at 23).

*Bucklew* also announced an "additional holding" on "a legal issue that had been uncertain." *Id.,* at ___ (opinion of KAVANAUGH, J.) (slip op., at 1). Namely, "[a]n inmate seek-

ing to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Id.,* at ___ (majority opinion) (slip op., at 19).[1] After *Bucklew*, an alternative method of execution may be feasible and readily implemented even if it is not currently legal in the State.

This Court subsequently vacated the Eighth Circuit's decision in Johnson's case and remanded for reconsideration in light of *Bucklew*. On remand, the Eighth Circuit recognized that *Bucklew* changed the law relevant to Johnson's claim in at least one respect. Previously, "[t]hat a method was new could make it more difficult for the prisoner to meet his burden," but it "did not foreclose the claim as a matter of law at the pleading stage." 954 F. 3d, at 1102. *Bucklew*, however, "superseded that reasoning." 954 F. 3d, at 1102. In the Eighth Circuit's view, the novelty of nitrogen gas as a method of execution now ruled it out as an alternative. See *ibid.*

Johnson asked the Eighth Circuit to remand his case to the District Court so that he could amend his complaint in light of *Bucklew*'s additional ruling that a suitable alternative method of execution need not be authorized in the State. On that point, however, the Eighth Circuit concluded that *Bucklew* did not "constitut[e] an intervening change in law" warranting leave to amend. 954 F. 3d, at 1103. Instead, the court determined that Johnson should have known, presumably when he filed his second amended complaint, that he needed to allege all possible alternative methods of execution "that he wished to pursue," whether

---

[1] Indeed, just a few months after Johnson filed his second amended complaint, and over a year before this Court decided *Bucklew*, this Court allowed to stand a decision that denied an Eighth Amendment claim on the ground that "Alabama law does not expressly permit execution by firing squad, and so it cannot be a 'known and available' alternative under *Glossip*." *Arthur* v. *Dunn*, 580 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 1).

authorized in Missouri or not. *Ibid.* In support, the Eighth Circuit relied on *McGehee* v. *Hutchinson*, 854 F. 3d 488 (2017) (*per curiam*) (en banc), in which the court had "first addressed" whether an alternative method of execution must be authorized by state law. 954 F. 3d, at 1103. In a single sentence, and citing no prior Eighth Circuit precedent, *McGehee* declined to "say that an alternative method must be authorized by statute or ready to use immediately." 854 F. 3d, at 493.

As the Eighth Circuit acknowledged in Johnson's case, however, *McGehee* was decided several months "after Johnson filed his latest amended complaint." 954 F. 3d, at 1103; see Second Amended Complaint in No. 2:15–cv–4237, ECF Doc. 41 (WD Mo.). Thus, it could not have settled the question whether an alternative method of execution must be authorized by state law when Johnson filed his operative complaint. Nevertheless, the Eighth Circuit attempted to flip the script, arguing that no binding precedent forbade Johnson from pleading the firing squad prior to *Bucklew*. See 954 F. 3d, at 1103. Then, citing *Bucklew*'s admonition that method-of-execution challenges should be resolved "'fairly and expeditiously,'" the Eighth Circuit concluded that Johnson should not be allowed to amend his complaint. 954 F. 3d, at 1103 (quoting 587 U. S., at ___ (slip op., at 30)).

Johnson now petitions for a writ of certiorari.

## II

The Federal Rules of Civil Procedure mandate that courts "should freely give leave [to amend] when justice so requires." Rule 15(a)(2). This Rule reflects the "'principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Foman* v. *Davis*, 371 U. S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Ibid.* For that reason, denying leave to amend a potentially

viable claim requires a "justifying reason," such as "undue delay, bad faith[,] or dilatory motive on the part of the movant." *Ibid.* Absent such a justification, denying leave to amend "is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Ibid.*

Johnson's claim plainly may be a proper subject of relief. On remand, the Eighth Circuit identified just one defect in Johnson's allegations: On its reading of *Bucklew*, nitrogen gas was no longer a viable alternative method of execution. Any such defect can be corrected easily. Now that *Bucklew* has announced that alternative methods of execution need not be authorized by state law, Johnson is prepared to allege that he should be executed by firing squad. Unlike nitrogen gas, the firing squad has a long track record of successful use. See, *e.g., Bucklew*, 587 U. S., at \_\_\_ (slip op., at 13) (describing "traditionally accepted methods of execution[,] such as . . . the firing squad"). Missouri itself suggested the firing squad as an alternative to nitrogen gas during oral arguments in *Bucklew*. See Tr. of Oral Arg. in *Bucklew* v. *Precythe*, O. T. 2018, No. 17–8151, p. 64 ("[I]f you really thought that he was going to suffer this excruciatingly, he has an option available. He can plead all kinds of alternative methods of execution that are not completely untested and completely unknown. . . . He can plead firing squad").

Because amendment would not be futile, there must be a special justification to deny Johnson leave to amend. The Eighth Circuit offered two: Johnson "had ample opportunity to allege any alternative method that he wished to pursue" prior to *Bucklew*, and giving him a chance to do so now would be inconsistent with this Court's instruction that "'method-of-execution challenges'" should be "'resolved fairly and expeditiously.'" 954 F. 3d, at 1103 (quoting *Bucklew*, 587 U. S., at \_\_\_–\_\_\_ (slip op., at 29–30)).

The notion that Johnson had ample opportunity to allege

the firing squad rests on a flawed assumption that Johnson should have anticipated *Bucklew*. Placing such an impossible burden on Johnson (a burden that even the Eighth Circuit failed to meet in 2018) undermines the basic purpose of our pleading system. Notice pleading is designed to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson* v. *Pardus*, 551 U. S. 89, 93 (2007) (*per curiam*) (internal quotation marks and ellipsis omitted). It is not meant to be "'a game of skill in which one misstep'" prevents a potentially meritorious claim from being heard. *Foman*, 371 U. S., at 181. Missouri has had ample notice of the basis for Johnson's claim, which fully satisfied the pleading standard prior to *Bucklew*, as the Eighth Circuit itself acknowledged. Johnson's only misstep was to plead an alternative method of execution that was both adequate under existing precedent and already legal in Missouri, rather than an alternative method of execution that was not authorized by state law but had been successfully used in the past elsewhere. Put simply, his only misstep was failing to predict *Bucklew* and address it pre-emptively. He bears no fault for that.

The Eighth Circuit suggested that its decision in *McGehee* put Johnson on notice that he could plead an unauthorized method of execution like the firing squad. See 954 F. 3d, at 1103. But *McGehee* was decided "after Johnson filed his latest amended complaint," and thus provided no advance notice. 954 F. 3d, at 1103. Even setting aside the timing of the decision, *McGehee*'s one-sentence comment that the Eighth Circuit declined to "say that an alternative method must be authorized by statute," 854 F. 3d, at 493, was beside the point for Johnson, who had properly alleged an alternative method of execution that was both authorized by statute and entirely adequate under Eighth Amendment precedent at the time. Only after *Bucklew* did Johnson need to look beyond Missouri law for an alternative method of execution. He is entitled to an opportunity to do

so, especially because he seeks to allege the very method of execution that Missouri suggested during oral arguments in *Bucklew*.[2]

The Eighth Circuit's invocation of *Bucklew*'s concern for fair and expeditious resolutions of claims does not justify its decision, either. *Bucklew* did not create an exception to the Federal Rules of Civil Procedure for method-of-execution claims. It certainly does not permit courts to ignore potentially meritorious claims for the sake of expediency. *Bucklew* sought only to guard against "attempts to use . . . challenges as tools to interpose unjustified delay." 587 U. S., at \_\_\_ (slip op., at 30).

There is no reason to think Johnson sought leave to amend as a delay tactic. The Eighth Circuit had already determined that Johnson plausibly alleged that executing him by lethal injection will cause serious pain. *Bucklew* suggested that plaintiffs in exactly this situation should have little trouble identifying an available alternative. See *id.,* at \_\_\_ (slip op., at 20); *id.,* at \_\_\_ (opinion of KAVANAUGH, J.) (slip op., at 2) ("[A]n inmate who contends that a particular method of execution is very likely to cause him severe pain should ordinarily be able to plead some alternative method of execution that would significantly reduce the risk of severe pain"). Johnson seeks only to take *Bucklew* up on that promise. Denying him leave to amend his complaint under these circumstances renders this Court's words an empty gesture.

––––––––––

[2] This is now the second time that Missouri has opposed an alternative method of execution that the State itself previously held out as an option. Johnson's prior alternative method of execution, nitrogen gas, was the very method that Missouri's Legislature had adopted as an alternative to lethal injection. This litigation strategy calls into question whether Missouri intends to allow for any alternatives to its lethal injection protocol, even if pentobarbital will cause constitutionally intolerable pain.

\*      \*      \*

Think about what the Eighth Circuit has done in the interest of moving things along more quickly.  Johnson has plausibly pleaded that, if he is executed using pentobarbital, he will experience pain akin to torture.  Those factual allegations must be accepted as true at this stage of the litigation.  Yet despite the risk of severe pain rising to the level of cruel and unusual punishment, the Eighth Circuit has ensured that no court will ever review the evidence in support of Johnson's Eighth Amendment claim.

Even if Johnson had full notice that he could have pleaded the firing squad before *Bucklew* (which he plainly did not), his decision to choose a different method of execution that was also authorized by state law is no reason to deny him an opportunity to be heard and subject him to the serious pain he alleges.  "There are higher values than ensuring that executions run on time."  *Id.,* at ___ (SOTOMAYOR, J., dissenting) (slip op., at 5).  The Eighth Amendment sets forth one: We should not countenance the infliction of cruel and unusual punishment simply for the sake of expediency.  That is what the Eighth Circuit's decision has done.  Because this Court chooses to stand idly by, I respectfully dissent.